UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
————————————————————————x

BERNARD MCILWAIN,

                         Plaintiff                       DOCKET

     -against-                              COMPLAINT

THE NEW YORK CITY DEPARTMENT/BOARD    *Jury Trial Demanded*
OF EDUCATION; CHARITY GUERRA, Executive
Deputy Counsel, Administrative Trials Unit;
WILLIAM JUSINO, Principal, Progress High School;
KAREN WATTS, Superintendent, District 14;
SALVATORE MANCUSO, Assistant Supervising
Investigator, Special Commissioner of Investigation,
all named in their official and individual capacities,

                      Defendants

————————————————————————x

      Plaintiff BERNARD MCILWAIN, ("Plaintiff") by and through his attorneys, Mason Law, PLLC., brings this action against the Defendants, the NEW YORK CITY DEPARTMENT/BOARD OF EDUCATION, ("NYCDOE"), CHARITY GUERRA, WILLIAM JUSINO, KAREN WATTS, and SALVATORE MANCUSO, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff BERNARD MCILWAIN ("Plaintiff") brings this action seeking monetary and injunctive relief and punitive damages for the unlawful procedures used in charging him with 3020-a allegations and for his termination in retaliation for his whistleblowing illegal acts of the Principal at the public school in which he worked.

2. Plaintiff has suffered irreparable losses of income and good standing after a disciplinary hearing in which tenure procedures guaranteed by Constitutional rights codified in

1

Education Law §§3030 and 3020-a(2)(a) were denied to him by Defendants acting collectively under color of law before the arbitration began.

3. Plaintiff seeks recovery of monetary damages for the harm caused to his reputation, livelihood, and career as an Assistant Principal for Health and Education and Athletic Director at Progress High School; for the defamation, discrimination, distress, anguish and humiliation, impairment of ability to secure future employment, impairment of earning power and embarrassment inflicted upon him due to the negligence, carelessness, recklessness, and, misfeasance, malfeasance, and negligent acts practices, and/or omissions of the Defendants, particularly in deviating from the acceptable standards of review and compliance with Stigma Plus effects due to violations of New York Executive Law Section 296 Section 15, First and Fourteenth Amendment of the United States Constitution and those parts of the New York State Constitution which similarly apply with like language and together with this Court's pendent jurisdiction over causes of action arising under New York State laws, both common and statutory; State laws governing employment and workplace harassment, retaliation, fraud and deceit; failing to abide by the Due Process guarantees under Education Law §§3020 and 3020-a(2)(a) (Tenure Law); and further, in violating State and Federal Civil Rights, 42 U.S.C. § 1983 including but not limited to State and Federal Constitutional violations for a denial of due process and the Equal Protection of the Laws.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 as this matter involves federal questions.

5. This action's venue properly lies in the United States District Court for the Eastern

2

District of New York, pursuant to 28 U.S.C. § 1391, because Plaintiff was employed as an Assistant Principal and Athletic Director by the NYCDOE at Progress High School in Brooklyn, New York and because a substantial part of the acts or omissions giving rise to this action occurred in this District and the Defendant maintains offices in this District.

6.  This Court has the authority to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.   This Court has supplemental jurisdiction over Plaintiffs' state and city law claims under 28 U.S.C. § 1367(a).

8.  Plaintiff filed a Notice of Claim more than thirty days prior to the filing of this action, however this Notice has not been adjusted nor has the NYCDOE offered any relief.

## JURY DEMAND

9.  Plaintiff demands a trial by jury on all issues properly triable thereby pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

10. Plaintiff is a resident of Youngsville, N.Y., and taught at Progress High School for most of his career of 22 years. His position was Assistant Principal and Athletic Director.

11.  At all times relevant herein, Defendant the Department of Education of the City of New York ("NYCDOE") is a public corporation established pursuant to Title II, Article 52-A of the New York State Education Law, (Educ. Law 2590 *et seq*) and as such is required to comply with all Federal, State and City laws.

12.  At all relevant herein, Defendant Charity Guerra was and is, Executive Deputy Counsel for Administrative Trials, Operations and Compliance working within the New York City

Department of Education Office of General Counsel and is in charge of the procedures and outcomes of Education Law 3020-a hearings in the New York City school district.

13. At all relevant herein, Defendant William Jusino was the Principal of Progress High School, a school within the New York City Department of Education and subject to all State and Federal laws and City regulations.

14. At all times relevant herein, Defendant Karen Watts was Superintendent of District 14, and as such, on March 15, 2017, signed Plaintiff's "Notice of Determination of Probable Cause on Education Law Charges" in deliberate violation of the Education Law 3020 without a date for an Executive Session of the Panel For Educational Policy ("PEP").

15. At all times relevant herein, Defendant Salvatore Mancuso was and is Assistant Supervising Investigator at the New York City School District Office of the Special Commissioner of Investigation. Defendant Mancuso's salary is paid by the DOE.

16. At all relevant times the Constitutional protections of tenure and educator discipline have been public policy in New York State, with Section 3020-a codified in Education Law Article 61, whereas Section 2590 citing the duties and responsibilities of the NYCDOE Chancellor is placed in Education Law Article 52(a), placed outside of the tenure law by the New York State Legislature.

17. Defendants ignored the intent of the legislators who codified the procedures in Education Law §§3020 and 3020-a(2)(a), which was to protect tenured employees from the whims and fancy of administrators who retaliated against or acted maliciously in careless and deliberate violation of law toward those persons who worked under their authority and control.

**FACTUAL ALLEGATIONS**

18. Plaintiff was an Assistant Principal for Health and Education and Athletic Director at Progress High School throughout his career with the NYC Department of Education for almost 22 years. His record was tainted when Principal William Jusino ("Jusino") retaliated against him for defending a co-worker in 2014.

19. Plaintiff was employed by the Department of Education since 1998. During the 2013-2014 school year, the summer of 2014 and 2014-2015 school year, Plaintiff was appointed Assistant Principal and Athletic Director of Progress High School in Brooklyn New York, a high school, with a predominantly African American and Latino population.

20. From 2014 until he was charged in 2017 Plaintiff and other staff at the school were subjected to the wrath of Jusino for speaking out about fraud and deceit.

21. Petitioner had no disciplinary record until he was subjected to Jusino's pattern of retaliation starting in August of 2014 and ending in the bringing of charges in March 2017. It is the Plaintiff's position that these charges were false and pre-textually made by Jusino in retaliation for Plaintiff coming to the aid of another teacher in the school.

22. In 2017 Plaintiff was served with 3020-a Specifications cited him for allegedly creating fraudulent vouchers for the school's team uniforms. The Department not only contended these vouchers were fraudulent, but that Plaintiff facilitated the hiring of a substitute teacher without authority, and that he disobeyed the Principal's directive to cease all purchasing activity when he authorized the purchase of football headsets. The allegations were false, and against the weight of the evidence presented at the 3020-a hearing by the parties.

23. The 3020-a Specifications were created to punish Plaintiff for helping employees who

did not want to comply with Jusino's fraud and deceit. Jusino started an investigation of Plaintiff for the purchasing of items for which Jusino had approved six months earlier, in order to have a reason to malign Plaintiff's career and character. It was part of a scheme to bring Plaintiff up on charges and have him removed from the school.

24. The finding by Arbitrator Felice Busto that the invoices allegedly created by Plaintiff were false is against the weight of the evidence as many of the students as well as the coaches testified to receiving the uniforms. The record is clear that the principal gave his delegated authority to the Plaintiff in 2014 and through 2017. Busto again made a grave error in substantiating this false allegation. The arbitrator's finding is contrary to law in not applying Plaintiff's right to face his accusers.

25. Busto also accepted conclusions of SCI not supported by the record. Busto adopted the false narrative of the Defendants in order to continue to be paid as arbitrator at Plaintiff's 3020-a, yet knew, or should have known, that she did not have subject matter jurisdiction to make any conclusions due to the violation of Education Law 3020 and 3020-a(2)(a) in the pre-hearing charging procedures.

26. Jusino lied under oath at the hearing, and SCI investigator Salvatore Mancuso signed off on the fraud as if it were true, when Mancuso knew, or should have known, that the allegations were false and created in retaliation by Jusino.

27. Jusino repeatedly used SCI as a sword against Plaintiff and anyone else who dared to block his fraudulent financial dealings inside the school. This is particularly ironic, considering the charges against Jusino which were substantiated in 2014 by SCI in Case #2014-4363.

28. Jusino's actions had a chilling effect on the school and the power of the principal against

its employees if they stand up to the principal.

29. In addition, Plaintiff asked for three specific SCI files which were never provided. Plaintiff could not confront witnesses and investigators who filed charges against Jusino yet only a minor charge was sustained by SCI in the 2014 report.

30. Since his termination, Plaintiff has been blacklisted by the Defendants' Office of Personnel Investigations after OPI put a "no hire" or "problem code" on his fingerprints. No one explained to him the reason for the additional extreme hardship of having his personnel file flagged by this code when he was charged with 3020-a, putting a target on his record even before his hearing began. His name has been maligned above and beyond the false charges, and he has been harmed by the fraud engaged in by the Defendants.

31. It is Plaintiff's position that the charges filed against him resulting in his being forced into a 3020-a arbitration were false and were pre-textually made by the Jusino in retaliation for Plaintiff coming to the aid of another teacher in the school.

32. The hearing started with a pre-hearing conference on February 22, 2018, and ended with a close of the record on October 9, 2018. Busto's Decision dated October 29, 2018, substantiated Specifications 1 (a)-(e), 3, and 4, and terminated Plaintiff. All of this is fraudulent and a violation of tenure law 3020-a(2)(a) which protects the Plaintiff from exactly this type of revenge retaliation by the employer.

33. Plaintiff's due process rights were violated at his 3020-a hearing by the NYCDOE's failure to provide Plaintiff with material records from the Special Commissioner's Office of Investigation. The NYC DOE was complicit in this, resulting in the denial of access to those records necessary to defend himself and substantiate his claims. In these

reports were documents which could have supported his claim of retaliation, confirmed the timeline, and validate Plaintiff's testimony. Busto's *de novo* review of the matter is no substitute for the constitutional protections that the U.S. and New York State constitutions afford the accused in an arbitration proceeding.  From the very beginning of the proceedings the Plaintiff argued the necessity of obtaining those records and witnesses that the SCI group had, as germane to his claims. He was denied.

34. The Department knowingly and with malicious intent forced Plaintiff to proceed into a hearing that did not have a proper determination of probable cause. NYCDOE Executive Deputy Counsel and Defendant Charity Guerra deliberately denied Plaintiff his right to have a vote in an Executive Session to determine probable cause as required by Education Law 3020-a(2)(a), and Plaintiff was not given his contractual and lawful right to choose his arbitrator for his 3020-a hearing. Busto was chosen by the Department without Plaintiff's knowledge or consent.

35. Most shocking is the signature of Executive Superintendent Karen Watts on the charging paper with the title "Notice of Determination of Probable Cause Pursuant to Education Law Section 3020-a Charges". She signed this document on 3-15-2017 without any legal authority to do. Defendant Watts was aware of the bullying and harassment of Plaintiff by Jusino after Plaintiff supported an employee with whom he worked who was being investigated by SCI in 2015.

36. On August 31, 2015, Plaintiff sent an email Defendant Watts explaining the retaliation by Jusino and asking for her support, but Defendant Watts only thanked him for bringing his concerns to her attention and that she would bring Plaintiff's complaints to SCI.

37. Defendant Mancuso knew, or should have known, of Plaintiff's compliance with the SCI Reporting Obligations and the Departments prohibition against retaliation, yet he supported the false and fraudulent statements made by Jusino against Plaintiff.

38. Due to the deliberate violation of Plaintiff's tenure protections by the Department, and the lucrative position of Arbitrator Felice Busto on the panel of Arbitrators hearing 3020-a cases, the Department was able to deny Plaintiff his right to a fair hearing as well as a proper determination of probable cause.

39. On or about June 22, 2021 Plaintiff became aware of the fraud underlying his Education Law 3020-a charges, specifically that there was no proper or lawful determination of probable cause and no vote by the Panel For Educational Policy in an Executive Session, resulting in an unlawful hearing where Arbitrator Felice Busto never had subject matter jurisdiction. Since Busto did not have subject matter jurisdiction over the charges submitted to her, she had no authority to proceed to a full hearing, nor did she have a lawful right to decide on any penalty.

**FIRST CLAIM FOR RELIEF**
**Violation of 42 U.S.C. §1983**
**First Amendment**

40. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

41. § 1983 protects against municipal actions that violate a constitutional rights, including actions that violate rights to due process, equal protection of laws and just compensation for the taking of freedom of speech rights under the First Amendment to the United States Constitution. A tenured employee of the NYC Department of Education has a constitutional right to speak as a citizen on matters of public concern with the

expectation that he would not be subjected to retaliation.

42. While acting under color of State Law, Defendants violated Plaintiff's First

Amendment and tenure rights by retaliating against him for exercising his freedom of

speech as a citizen with regard to matters of public concern when he refused to give

details of his interview with SCI in 2015 to Jusino. Jusino's successful campaign which

concluded with Arbitrator Felice Busto's decision in 2018.

43. SCI Reporting Obligations and Cooperation are clearly cited on the NYC Department

of Investigation website

(https://www1.nyc.gov/site/doi/sci/reporting-obligations.page):

"(e) Every officer and employee of the City School District of the City of New York,
the Chancellor, the PEP and all other officers and employees of the City shall have
the affirmative obligation to report, directly and without undue delay, to the Special
Commissioner of Investigation, any and all information concerning conduct which
they know or should reasonably know may involve corrupt or other criminal activity
or conflict of interest (i) by an officer or employee of the City School District which
concerns his or her office or employment, or (ii) by persons dealing with the City
School District, which concerns their dealing with the school district, and shall
proceed in accordance with the Special Commissioner's directions. The knowing
failure of any officer or employee to so report shall constitute cause for removal from
office or other appropriate penalty."

44. Plaintiff spoke to SCI in good faith about a colleague who he believed to be harassed

by Jusino. However, when Jusino was told that the charge against this employee was

unsubstantiated, he retaliated against Plaintiff for speaking with SCI and began a

campaign to harass Plaintiff and get him terminated.

45. Plaintiff spoke to SCI as a citizen on a matter of public concern – namely on the issue

of school administrators committing fraud and revenge on employees – and reported

the retaliation and hostile actions to SCI and Defendant Watts, then was charged with

3020-a allegations in retaliation.

46. Plaintiff has demonstrated that (1) he engaged in speech as a citizen protected by the First Amendment, as a result of which (2) he suffered an adverse employment decision, and (3) "a causal connection existed between the speech and the adverse employment decision, so that it can be said that [his] speech was the motivating factor in the determination." Walter v. Boehm, 309 Fed. Appx. 531, 532 (2d Cir. N.Y. 2009) (summary order) (quoting Gronowski v. Spencer, 424 F.3d 285, 292 (2d Cir. 2005)).

47. Defendants, under color of State Law, by allowing the retaliation, in clear violation of Plaintiff's protected rights to freedom of speech, and to remain free from retaliation after being ordered to report to SCI, denied Plaintiff his rights under the First Amendment.

48. As a proximate result of Defendants' retaliatory actions against Plaintiff, Plaintiff has suffered and continues to suffer a loss of past and future income, monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to his professional reputation, in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983;**
**Fourteenth Amendment Due Process**

49. Plaintiff repeats and realleges each and every allegation contained above, inclusive with the same force and effect as if more fully set forth herein.

50. While acting under the color of state law, the Defendants constructively terminated Plaintiff's New York City License without providing procedural due process before the deprivation of property.

51. In order to state a procedural due process cause of action under Section 1983, Plaintiff must show that state action complained of deprived him of a property interest protected

11

by the Fourteenth Amendment of the United States Constitution. Waronker v. Hempstead Union Free Sch. Dist., 788 Fed. App'x 788, 793 (2d Cir. 2019); Fike v. Town of Webster, 11 A.D.3d 888, 890 (4th Dep't 2004).

52. Plaintiff has a property interest protected by the 14th Amendment, namely his tenure and all those rights attached. Here, a deprivation has occurred, his termination, because of the unlawful charging procedure designed and implemented by Defendants acting in concert.

53. Plaintiff was served 3020-a charges which did not have a date for the Executive Session, and no vote on probable cause for his charges. This is a violation of Education Law Section 3020-a(2)(a), (Tenure Law) held as public policy in New York State..

54. Additionally, the Notice of Determination of Probable Cause served on Plaintiff in 2017 is fraudulent, as the document is signed by Defendant Karen Watts. Watts has no authority to execute the document and there is no law, rule, regulation or memo which gives her this authority.

55. The State legislature made certain this "one-stop shop" procedure would not happen by codifying into Education Law 3020 that there cannot be any bargaining away of Sections 1 or 2 of the Education Law which details the charging procedures for 3020-a due process as well as the finding of probable cause. While certain other duties and responsibilities could be delegated by the Chancellor to those at other administrative levels within the NYC DOE, a determination of probable cause is not delegable.

56.  Thus, as no Chancellor can change Sections 1 or 2 of the Education Law, and Section (2)(a) stands as good Law for any 3020-a disciplinary action. See Appeal of Forrest, Decision No. 15,482 (2006; Education Law 3020; and the following analysis of

Teacher Trials on Advocatz.com:

"Teacher Tenure Trials "3020-a" and Ending Mandatory Arbitration"

https://advocatz.com/2022/02/24/teacher-tenure-trials-3020-a-and-ending-mandatory-arbitration/

57. According to the Education Law 3020, Sections 1 and 2 cannot be bargained away or changed by fiat. See Education Law 3020 (3)(iii):

"(iii) the provisions of subdivisions one and two of this section shall not apply to agreements negotiated pursuant to this subdivision"

58. Due to there being no Executive Session and no vote by the PEP on probable cause, Plaintiff's 3020-a hearing should never have proceeded, and Arbitrator Busto lacked subject matter jurisdiction to decide the penalty for the charges. See Cardinale v NYC Department of Education, Index 85165/17. Plaintiff's due process procedures cited in Education Law 3020-a (2)(a) are Constitutionally protected, giving Plaintiff a property and liberty right to the procedures cited in Education Law Section (2)(a). Plaintiff never waived his right to these procedures. See Hackett v. Milbank, Tweed, Hadley & McCloy, 86 N.Y.2d 146,154-55, 630 N.Y.S.2d 274,654 N.E.2d 95 [1995];  Board of Education v. Gootnick, 49 N.Y.2d 683 (1980).

59. The United States Supreme Court has defined waiver as "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U. S. 458, 464 (1938). Courts should "indulge every reasonable presumption against waiver, Aetna Ins. Co. v. Kennedy, 301 U. S. 389, 393 (1937), and they should "not presume acquiescence 526*526 in the loss of fundamental rights," Ohio Bell Tel. Co. v. Public Utilities Comm'n,301 U. S. 292, 307 (1937).

60. In Carnley v. Cochran, 369 U. S. 506 (1962), the Court held:

"Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not waiver." Id., at 516.

61. Additionally, a waiver of a teacher's tenure rights must be knowingly and freely given. Matter of Gould v. Bd. of Educ. of the Sewanhaka CHSD, et al., 81 NY2d 446; Matter of Abramovich v. Bd. of Educ. of the Three Villages CSD No. 1, 46 NY2d 450.

62. The denial of Plaintiff's due process claims presented by the omission of any lawful determination of probable cause was a strategic defect known to all Defendants, and pursued by all in order to obtain Plaintiff's termination. All the Court decisions before Cardinale v NYC Department of Education (Index No. 85165/2017, 4/03/2018) and all the arbitrators in 3020-a proceedings have ignored the foundational paragraph of Education Law §2590-h:

"[Eff. June 30, 2019, pursuant to L.2002, c. 91, § 34 . See, also, opening par. above.] The office of chancellor of the city district is hereby continued. It shall be filled by a person employed by the city board by contract for a term not to exceed by more than one year the term of office of the city board authorizing such contract, subject to removal for cause. The chancellor shall receive a salary to be fixed by the city board within the budgetary allocation therefor. He or she shall exercise all his or her powers and duties in a manner not inconsistent with the policies of the city board. The chancellor shall have the following powers and duties as the superintendent of schools and chief executive officer for the city district, which the chancellor shall exercise to promote an equal educational opportunity for all students in the schools of the city district, promote fiscal and educational equity, increase student achievement and school performance and encourage local school-based innovation, including the power and duty to….."

63. Therefore, Defendants created an unlawful procedure to deny Plaintiff his Constitutional rights to due process and a fair hearing before any deprivation.

64. As a proximate result of Defendants' retaliatory actions against Plaintiff, Plaintiff has suffered and continues to suffer a loss of past and future income, monetary damages,

humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to his professional reputation, in an amount to be determined at trial.

**THIRD CLAIM FOR RELIEF**
**42. U.S.C. § 1983;**
**Fourteenth Amendment Equal Protection**

65. Plaintiff repeats and realleges each and every allegation contained above, inclusive with the same force and effect as if more fully set forth herein.

66. The Defendants are guilty of not only taking away due process rights in the procedures cited here, but also removing tenured NYC Department employees from equal protection of the law while leaving all educators outside of NYC with the procedures cited in Education Law 3020-a(2)(a) as tenure law protection. This is a violation of the Fourteenth Amendment.

67. Section §3020-a is codified in Education Law Article 61, whereas Section 2590 is found in Education Law Article 52(a). This placement dichotomy is not a mere trivial distinction, but rather reflects both a legislative determination (and intent) to expressly separate the powers of the Chancellor from the statutory due process template applicable to the termination of tenured teachers. Job termination is both a vital, and valued contractual right for tenured teachers, and stands separate and apart from the Education Law article (Article 52(a)) addressing "mayoral control" of city schools. Tenured teachers were clearly not the intended primary target (or subject) of those legislators who granted the Mayor the powers he sought to take back from the former Board of Education.

68. Yet the Defendants have no argument that the State Legislature failed to amend

Education Law Section 3020-a to include a provision detailing the removal of tenured

personnel. If the Legislature intended to dramatically alter the prophylactic protection

enjoyed by tenured pedagogues, it would have done so both clearly, and unequivocally

– i.e. a new subdivision for cities of one million or more would have sequentially

followed subd. (2) and trumpeted such a tectonic change.

69. The State Legislature recognized the delegation of many ministerial tasks, minor duties,

and responsibilities, except that of the termination of employment of tenured faculty

and principals, retaining them in 3020-a.

70. Nothing contained in the Legislation authorizing mayoral control suggests the

Legislature knew (much less sanctioned) the power to initiate termination by a dramatic

downward delegation to a Superintendent or school principal. Indeed, such lesser tasks

as reviewing unsatisfactory ratings are conducted by designated hearing officers, and

reviewed by a deputy Schools Chancellor at Defendant's Manhattan headquarters. As

for the determination of probable cause, Defendants show that they support and

validate that any person may file charges, thus downgrading the charging process from

a high-level mayoral appointee to minor school personnel.

71. There are now two distinct and free-standing versions of pedagogical due process in

New York State. For those teachers employed in the 57 counties outside New York

City, the traditional 3020-a due process applies with high level review required before a

principal's termination application is initiated. Once a person crosses into the City of

New York that modicum of due process ceases to exist and school principals act as the

equivalent of both a pedagogical investigator and grand jury, leaving two separate

systems existing side by side dependent solely if the teacher works for the NYC

Department of Education or elsewhere.

72. This distinction creates a "suspect classification" (and disparate treatment), denying New York City teachers equal protection of the law, as guaranteed by Article 1, Section 11 of the New York State Constitution (see Board of Education Levittown Union Free School District v. Nyquist, 83 A.D. 217, 234-239, 443 N.Y.S 2d 843 [2nd Dept. 1981, per Lazer, J.]).

73. The Education Law Section 3020-a statutory protocols established a series of legal protections against vindictive or episodic administrators seeking to use the threat of sanctions to jawbone teachers to bend to their will of supervisory personnel with the power to issue annual "performance ratings" to compel compliance. Accepting that New York City mayoral control was primarily driven by the cost and dysfunctionality of the former Board of Education, the notion that curtailing terminating 3020-a protections was never an advanced component of legislative change. While there were periodically voiced concerns addressing the difficulty of terminating seriously poorly performing pedagogues, such concerns were not the primary driver of mayoral control.

74. The legislative intent in codifying the procedures in Education Law 3020-a(2)(a) was to provide pedagogues protection from vindictive principals who may want to remove senior teachers from their positions for random, arbitrary or capricious reasons. Thus, Education Law 3020-a(2)(a) is an important part of the efforts of legislators to maintain a check and balance of power in NY State governance and policy. As stated by New York's Court of Appeals in Ricca v. Board of Ed. of the City Sch.Dist, 47 N.Y.2d 385, 418 N.Y.S.2d 345 (1979):

> "The tenure system is not an arbitrary mechanism designed to allow a school board to readily evade its mandate by the creation of technical obstacles . ...

Rather it is a legislative expression of a firm public policy determination that the interests of the public in the education of our youth can best be served by a system designed to foster academic freedom in our schools and to protect competent teachers from the abuses they might be subjected to if they could be dismissed at the whim of their supervisors. In order to effectuate these convergent purposes, it is necessary to construe the tenure system broadly in favor of the teacher, and to strictly police procedures which might result in the corruption of that system by manipulation of the requirements for tenure."

75. Additionally, N.Y. Municipal Home Rule Section 11(1)(c) states as follows:

"No local legislative body is empowered to enact laws or regulations which supersede state statutes, particularly with regard to the maintenance, support, or administration of the educational system."

76. Malice and bad faith were shown by all Defendants when Plaintiff's fingerprints were placed into the "no hire" "problem code" database at the NYC DOE Department of Human Resources' Office of Personnel Investigations at the same time that he was charged with 3020-a charges, or before. His personnel file was flagged before at the time he was charged with false allegations. The red flag is permanent and any prospective employer in the City of New York can get the information and decline to hire Plaintiff. This database with these red flags is sent to the FBI and Office of Victims' Services.

77. As a proximate result of Defendants' retaliatory actions against Plaintiff, Plaintiff has suffered and continues to suffer a loss of past and future income, monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to his professional reputation, in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983;**
**Fourteenth Amendment Stigma Plus**

78. Plaintiff repeats and realleges each and every allegation contained above, inclusive with the same force and effect as if more fully set forth herein.

79. "Stigma Plus" refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some `tangible interest' [e.g., the loss of government employment] or property right (the plus), without adequate process." DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003); "[t]he Due Process Clause of the Fourteenth Amendment prohibits a state actor from depriving a citizen of her life, liberty, or property without due process of law," the district court explained that "[l]oss of reputation can constitute deprivation of a liberty interest when, for example, it occurs in the course of dismissal from government employment," an action we commonly refer to as a "stigma-plus" claim. Id. at 362 (citing Patterson v. City of Utica, 370 F.3d 322, 329-30 (2d Cir. 2004)).

80. Plaintiff has argued that the "problem code" placed on his fingerprints at the time he was charged were public and permanent, and that he had no adequate, reasonably prompt, post-termination name-clearing hearing available to him to protect his reputational and professional interests.

81. Thus, Plaintiff has satisfied the important elements necessary to show a deprivation of the stigma component of a stigma-plus claim. See Patterson, 370 F.3d at 330: First, the Defendants cited him for fraud and placed his fingerprints into a "no hire" "problem code" database at the NYDOE Office of Personnel Investigations when he was charged with 3020-a allegations – not after he hearing decision was received. See: "First, the plaintiff "must . . . show that the government made stigmatizing statements about [him] — statements that call into question [the] plaintiff's `good name, reputation, honor, or integrity.'" Id. (quoting Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438,

446 (2d Cir. 1980)); "…statements that "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession" will satisfy the stigma requirement." Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630-31 (2d Cir. 1996). Second, "a plaintiff must prove these stigmatizing statements were made public." Patterson, 370 F.3d at 330 (citing Abramson v. Pataki, 278 F.3d 93, 101-02 (2d Cir. 2002)). Third, the plaintiff must show that the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment  Velez v. Levy, 401 F.3d 75, 89 (2d Cir. 2005); Patterson, 370 F.3d at 330, 335.

82. Plaintiff has shown that the stigma plus in this case has been shown by the loss of reputation without due process of law, in combination with the loss of a more tangible interest, is referred to as a "stigma plus" claim. The "stigma" within a stigma plus claim is the loss of reputation and the "plus" is the loss of a more tangible interest, such as employment. See Velez v. Levy, 401 F.3d 75, 87–88 (2d Cir. 2005); Spang v. Katonah-Lewisboro Union Free Sch. Dist., 626 F.Supp.2d 389, 394–95 (S.D.N.Y. 2009). "Because stigma plus is a species within the phylum of procedural due process claims, the Plaintiff must demonstrate that his liberty interest was deprived without due process of law in addition to proving the deprivation of a liberty interest". Segal v. City of New York, 459 F.3d 207, 213 (2d Cir. 2006).

83. As a proximate result of Defendant's actions against Plaintiff, Plaintiff has suffered monetary damages, a loss of past and future income, severe emotional distress, humiliation, mental and physical anguish and suffering and damage to his professional

reputation.

## FIFTH CLAIM FOR RELIEF
### Fraud and Deceit

84. Plaintiff repeats and realleges each and every allegation contained above, inclusive with the same force and effect as if more fully set forth herein.

85. While acting under the color of state law Defendants constructively terminated Plaintiff's license without providing procedural due process before the deprivation of property and misrepresenting the protections of the tenure law Education Law 3020-a(2)(a).

86. Fraudulent concealment of a non-existent waiver of the rights of tenured employees to the tenure law Education Law 3020-a(2)(a) by the NYCDOE cannot be sanctioned.

87. Defendants were negligent and departed from standards of good and accepted practice, of which they had a non-delegable duty to utilize reasonable care and judgment in the performance of their respective responsibilities and obligations with respect to the  Plaintiff, and such negligence was continuing and cumulative over the period of time referenced herein.

88. Defendants' negligence and negligent acts, whether taken singularly or in combination, were hidden and held secret from Plaintiff yet were the direct and proximate cause of  Plaintiff's suffering, mental anguish, and loss of personal dignity, both in the past and continuing in the future.

89.  The Defendants, their agents, servants and/or employees were careless and negligent in departing from good and accepted practice in the investigation and monitoring of the claims made against Plaintiff, in screening them before taking action against him for their credibility, veracity, and reliability before removing him from his position and forcing him into a compulsory arbitration which was

baseless and without any finding of probable cause.

90. Defendants designed and implemented a fraudulent scheme that failed to possess the requisite learning, skill, knowledge and judgment ordinarily exercised in investigating and monitoring claims against employees; failed to perform certain procedures, which any reasonably skillful and competent personnel would have so done under the circumstances; and violated each and every rule, regulation, code statute or ordinance governing the exercise of reasonable care and due diligence concerning the management, and control of the aforementioned situation, all to target Plaintiff and terminate him from his employment.

91. Plaintiff has been subjected to deceit by Defendants, whose intent is to cause - or recklessly disregard - the substantial probability of causing harm to the Plaintiff; damages have been severe; the harm to Plaintiff's life and career was foreseeable; the Defendants' conduct was the cause of the Plaintiff's distress; and facts show there is a breach of direct duty of care to the Plaintiff.

92. As a proximate result of Defendants' actions against   plaintiff,   plaintiff has suffered monetary damages, a loss of past and future income, severe emotional distress, humiliation, mental and physical anguish and suffering and damage to his professional reputation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests judgment against Defendants as follows:

    A.  For appropriate compensatory damages against Defendants in an amount to be determined at trial over the losses of $500,000.

    B.  For appropriate declaratory relief regarding the unconstitutional acts and practices of Defendants;

C.  For removal of Plaintiff's name from the Problem Code held in his personnel file

at the Division of Human Resources.

D.  For a return to his employment with all back pay, benefits, contractual standing,

and earned income credits to his pension;

E.  For nominal damages and Attorney fees;

F.  For such other relief and further relief as may be deemed just and proper;

Dated:      July 15, 2022
            New York, N.Y.

                                        MASON LAW, PLLC

                                        **/s/ D. Christopher Mason, Esq.**
                                         D. Christopher Mason (DM4673)
                                        11 Broadway - Suite 615
                                        New York, New York 10004
                                        T: 212-498-9691
                                        F: 212 498-9692