UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____x
BERNARD MCILWAIN,

                    Plaintiff                    Docket No:
                                                1:22-cv04163 (ENV-RML)

      -against-

THE NEW YORK CITY DEPARTMENT/BOARD
OF EDUCATION; CHARITY GUERRA, Executive
Deputy Counsel, Administrative Trials Unit;
WILLIAM JUSINO, Principal, Progress High School;
KAREN WATTS, Superintendent, District 14;
SALVATORE MANCUSO, Assistant Supervising
Investigator, Special Commissioner of Investigation,
all named in their official and individual capacities,

                    Defendants
_____x


# PLAINTIFF'SMEMO OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

                                        D. Christopher Mason

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES                                          2

PRELIMINARY STATEMENT                                        3

FACTUAL ALLEGATIONS                                          4

ARGUMENT

      POINT I:      PLAINTIFF'S CLAIMS AND
                      NOTICE OF CLAIM ARE TIMELY                9

      POINT 2:      PLAINTIFF'S COMPLAINT PROPERLY
                      PLEADS A FIRST AMENDMENT
                      RETALIATION CLAIM                         11

      POINT 3:      PLAINTIFF'S FOURTEENTH AMENDMENT
                      PROCEDURAL DUE PROCESS AND EQUAL
                      PROTECTION CLAIMS SHOULD NOT BE DISMISSED   15

      POINT 4:      PLAINTIFF HAS ADEQUATELY PLED FRAUD       29

CONCLUSION                                                   29

1

## TABLE OF AUTHORITIES

**CASES**                                                                                      **PAGES**

Anemone v. Metro. Transp. Auth,
    629 F.3d 97 (2d Cir. 2011)                                           19

Ashcroft v. Iqbal,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)             17

Bell Atl. Corp. v. Twombly,
    550 U.S. 544, , 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)           14, 17

Breithaupt v. Abram,
    352 U.S. 432 (1957)                                                 33

Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.,
    411 F.3d 306, (2d. Cir. 2005)                                       18

Cardinale v NYC Department of Education,
    Index No. 85165/2017                                                 15

Carnley v. Cochran,
    369 U. S. 506 (1962)                                                21

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002)                                         18

City of Sacramento v. Lewis,
    523 U.S. 833 (1998)                                                 33

Cleveland Bd. of Educ. v. Loudermill,
    470 U.S. 532[1985]                                                  22, 29

D'Antonio v. Little Flower Children & Family Servs. of N.Y., 17-CV-1221,
    2018 WL 1385897 (E.D.N.Y. Mar. 19, 2018)                            17

Dellatte v. Great Neck Union Free Sch. Dist., No. 10-cv-4348,
    2012 WL 164078                                                      14

Dory v. Ryan,
    999 F.2d 679, (2d Cir.  1993)                                       16

Engquist v. Oregon Dep't of Agr.,
    553 U.S. 591 (2008)                                                 31

2

Espinal v. Goard.
        558 F.3d 119 (2d Cir.2009)                                                19

Faulks v. City of Hartford,
        2010 WL 259076 (D.Conn. 2010)                                              31

Fierro v. New York City Dep't of Educ.,
        994 F. Supp. 2d 581, (S.D.N.Y. 2014)                                       31

Gentile v. Nulty.
        769 F. Supp. 2d 573 (S.D.N.Y. 2011)                                        31

Gronowski v. Spencer,
        424 F.3d 285 (2d Cir. 2005)                                                16

Hackett v. Milbank, Tweed, Hadley & McCloy,
        86 N.Y.2d 146, 630 N.Y.S.2d 274, 654 N.E.2d 95 [1995]                       21

Holt v. Board of Educ. Of Webutuck Cent. School Dist.,
        52 NY2d 625 (N.Y. 1981)                                                     22

Johnson v. Newburgh Enlarged Sch. Dist.,
        239 F.3d 246, (2d Cir. 2001)                                               33

Kamholtz v. Yates County,
        350 Fed. Appx. 589, (2d Cir.2009)                                          33

Keating v. Carey,
        706 F.2d 377, (2d Cir. 1983)                                               15

Matter of Abramovich v. Bd. of Educ. of the Three Villages CSD No. 1,
        46 NY2d 450 (N.Y. 1979)                                                    21, 22

Matter of Albany Law School v. New York State Office. of Mental Retardation & Dev.
Disabilities,
        19 N.Y.3d 106, 945 N.Y.S.2d 613, 968 N.E.2d 967 [2012]                     26

Matter of City of New York,
        228 N.Y. 140, 126 N.E. 809 [1920]                                          27

Matter of DaimlerChrysler Corp. v. Spitzer,
        7 N.Y.3d 653, , 827 N.Y.S.2d 88, 860 N.E.2d 705 [2006]                      26

Matter of Gould v. Bd. of Educ. of the Sewanhaka CHSD, et al.,
        81 N.Y.2d 446, 599 N.Y.S.2d 787, 616 N.E.2d 142 (N.Y. 1993)                21

Matter of New York County Lawyers' Assn. v. Bloomberg,
    19 N.Y.3d 712, , 955 N.Y.S.2d 835, 979 N.E.2d 1162 [2012]          27

Matter of Schumer v. Holtzman,
    60 N.Y. 2d 46, 467 N.Y.S.2d 182, 454 N.E.2d 522 (N.Y. 1983)        26, 30

Matter of Stephen Rosenblum, v New York City Conflicts of Interest Board et al.,
    75 A.D.3d 426; 2010 NY Slip Op 5875; 903 N.Y.S.2d 228         26

Mandel v. County of Suffolk,
    316 F.3d 368, (2nd Cir. 2003)         19

Monell v. Department of Social Services,
    436 U.S. 658, 98 S. Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)        14

Moore v. County of Suffolk,
    851 F.Supp.2d 447, (E.D.N.Y. 2012)        34

Morris v. Lindau,
    196 F.3d 102, (2d Cir.1999        19

Mosdos Chofetz Chaim. Inc. v. Vill. of Wesley Hills,
    815 F. Supp. 2d 679, (S.D.N.Y. 2011)        32

Mudge v. Zugalla,
    2014 WL 2453353 (N.D.N.Y. June 2, 2014)        32

New York City Transit Authority v Morris J. Eisen, P.C.,
    276 A.D.2d 78, 715 N.Y.S.2d 232, (N.Y. App. Div., 1st Dep't 2000)    34

Pani v. Empire Blue Cross Blue Shield,
    152 F.3d 67, (2d Cir. 1998)        17

Plyler v. Doe,
    457 U.S. 202, (1982)        31

Posr v. Court Officer Shield # 207,
    180 F.3d 409, (2d Cir.1999)        18

Ricca v. Board of Ed. of the City Sch. Dist,
    47 N.Y.2d 385, 418 N.Y.S.2d 345 (1979)        30

Rivera v. Cmty. Sch. Dist. Nine,
    145 F.Supp.2d 302, (S.D.N.Y.2001)        18

4

Rocovich v. Consolidated Edison Co.,
    78 N.Y.2d 509, 577 N.Y.S.2d 219, 583 N.E.2d 932 [1991]    26

Ruotolo v. City of New York,
    514 F.3d 184, (2d Cir. 2008)    14, 20

Sira v. Morton,
    380 F.3d 57, (2d Cir. 2004)    17

Sloup v. Loeffler,
    2008 WL 3978208 (E.D.N.Y. 2008)    31

Vaher v. Town of Orangetown, N.Y.,
    916 F. Supp. 2d 404 (S.D.N.Y. 2013)    32

Weintraub v. Bd. Of Ed. Of City Sch. Dist. of New York,
    593 F.3d 196, (2d Cir. 2010)    18,19

Woodlock v. Orange Ulster B.O.C.E.S.,
    281 F. App 'x 66, (2d. Cir. 2008)    18

**STATUTES**

42 U.S.C. 1983    8, 9, 14-16, 34

Fed R. Civ. P. 8    16

Fed R. Civ. P. 8(a)(2).    8, 13, 16

Fed. R. Civ. P. 12(b)(6)    14,16.17

N.Y. Educ. Law § 2590    24

N.Y. Educ. Law § 2590-f    24

N.Y. Educ. Law § 2590-h    24

N.Y. Educ. Law § 2590-h(19)    29

N.Y. Educ. Law § 2590-h(38-a)    29

N.Y. Educ. Law § 2590-j(7)(a)    27

N.Y. Educ. Law § 2590-(7)(b)    28

N.Y. Educ. Law § 3012                                                          22

N.Y. Educ. Law § 3012 a                                                        22

N.Y. Educ. Law § 3020                                        8,9, 21, 26, 27

N.Y. Educ. Law § 3020-a                                                        27

N.Y. Educ. Law § 3020-a(1)                                                     27

N.Y. Educ. Law § 3020-a(2)                                          17, 18, 25

N.Y. Educ. Law § 3020-a(2)(a)                          8, 9, 11, 20, 24, 25, 27, 30

N.Y. Educ. Law § 3020(3)(iii)                                              20, 23

N.Y. Municipal Home Rule § 11(1)(c)                                            26

**PRELIMINARY STATEMENT**

Plaintiff BERNARD MCILWAIN, ("Plaintiff") commenced this Section 1983 action alleging that the New York City Department of Education ("Defendant") wrongfully charged and terminated Plaintiff without engaging in proper due process procedures mandated by his tenured status while simultaneously covering up their retaliation against him for protected speech on matters of public concern under the First Amendment. Defendant deliberately and knowingly violated public policy under color of law in order to terminate Plaintiff without honoring his Constitutional rights, and this constitutes a cause of action for fraud. Plaintiff's due process rights under the Fourteenth Amendment and the Tenure Law Education Law 3020 and 3020-a(2)(a) mandated a proper determination of probable cause which Defendants chose to ignore in order to go around these Constitutional rights and terminate Plaintiff without just cause.

In the Defendant's Motion to Dismiss the Defendant continues to mischaracterize the errors of procedure Plaintiff cited in his Complaint concerning the Education Law 3020 and 3020-a. Thus Plaintiff continues to argue that he has a cause of action for fraud, 14th Amendment and statutory due process violations and that his requests for just and fair relief and compensation for his wrongful termination must be granted. (FRCP 8(a)(2)). Also argued below Plaintiff seeks injunctive relief and punitive damages for Defendant's retaliation for speaking out as a public citizen on a matter of public concern, as is his First Amendment right, and whistleblowing on the illegal acts of the principal at the public school in which he was employed.

Plaintiff has suffered irreparable, devastating loss of income and good standing after Defendant before the arbitration commenced obtained the pre-determined outcome of termination without probable cause. Defendant deviated from the acceptable standards of

review and compliance with Stigma Plus effects due to violations of his rights pursuant to the First and Fourteenth Amendments of the United States Constitution and those parts of the New York State Constitution which similarly apply with like language and together with this Court's pendent jurisdiction over causes of action arising under New York State laws, both common and statutory; State laws governing employment and workplace harassment, retaliation, fraud and deceit; failing to abide by the Due Process guarantees under Education Law §§3020 and 3020-a(2)(a) (Tenure Law); and further, in violating State and Federal Civil Rights, 42 U.S.C. § 1983 including but not limited to State and Federal Constitutional violations for a denial of due process and the Equal Protection of the Laws. Plaintiff waives it claims against the individual Defendants.

## **FACTUAL ALLEGATIONS**

Plaintiff was an Assistant Principal for Health and Education and Athletic Director at Progress High School throughout his career with the NYC Department of Education for almost 22 years. His record was tainted when Principal William Jusino ("Jusino") retaliated against him for defending a co-worker in 2014.

Plaintiff was employed by the Department of Education since 1998. During the 2013-2014 school year, the summer of 2014 and 2014-2015 school year, Plaintiff was appointed Assistant Principal and Athletic Director of Progress High School in Brooklyn New York, a high school, with a predominantly African American and Latino population.

From 2014 until he was charged in 2017 Plaintiff and other staff at the school were subjected to the wrath of Jusino for speaking out about fraud and deceit.

Plaintiff had no disciplinary record until he was subjected to Jusino's pattern of retaliation starting in August of 2014 and ending in the bringing of charges in March 2017. It is

9

the Plaintiff's position that these charges were false and pre-textually made by Jusino in retaliation for Plaintiff coming to the aid of another teacher in the school.

In 2017 Plaintiff was served with 3020-a Specifications cited him for allegedly creating fraudulent vouchers for the school's team uniforms. The Department not only contended these vouchers were fraudulent, but that Plaintiff facilitated the hiring of a substitute teacher without authority, and that he disobeyed the Principal's directive to cease all purchasing activity when he authorized the purchase of football headsets. The allegations were false, and against the weight of the evidence presented at the 3020-a hearing by the parties.

The 3020-a Specifications were created to punish Plaintiff for helping employees who did not want to comply with Jusino's fraud and deceit. Jusino started an investigation of Plaintiff for the purchasing of items for which Jusino had approved six months earlier, in order to have a reason to malign Plaintiff's career and character. It was part of a scheme to bring Plaintiff up on charges and have him removed from the school.

The finding by Arbitrator Felice Busto that the invoices allegedly created by Plaintiff were false is against the weight of the evidence as many of the students as well as the coaches testified to receiving the uniforms. The record is clear that the principal gave his delegated authority to the Plaintiff in 2014 and through 2017. Busto again made a grave error in substantiating this false allegation. The arbitrator's finding is contrary to law in not applying Plaintiff's right to face his accusers.

Busto also accepted conclusions of SCI not supported by the record. Busto adopted the false narrative of the Defendants in order to continue to be paid as arbitrator at Plaintiff's 3020-a, yet knew, or should have known, that she did not have subject matter jurisdiction to make any conclusions due to the violation of Education Law 3020 and 3020-a(2)(a) in the pre-hearing

10

charging procedures.

Jusino lied under oath at the hearing, and SCI investigator Salvatore Mancuso signed off on the fraud as if it were true, when Mancuso knew, or should have known, that the allegations were false and created in retaliation by Jusino.

Jusino repeatedly used SCI as a sword against Plaintiff and anyone else who dared to block his fraudulent financial dealings inside the school. This is particularly ironic, considering the charges against Jusino which were substantiated in 2014 by SCI in Case #2014-4363. Jusino's actions had a chilling effect on the school and the power of the principal against its employees if they stand up to the principal.

In addition, Plaintiff asked for three specific SCI files which were never provided. Plaintiff could not confront witnesses and investigators who filed charges against Jusino yet only a minor charge was sustained by SCI in the 2014 report. Since his termination, Plaintiff has been blacklisted by the Defendants' Office of Personnel Investigations after OPI put a "no hire" or "problem code" on his fingerprints. No one explained to him the reason for the additional extreme hardship of having his personnel file flagged by this code when he was charged with 3020-a, putting a target on his record even before his hearing began. His name has been maligned above and beyond the false charges, and he has been harmed by the fraud engaged in by the Defendants.

It is Plaintiff's position that the charges filed against him resulting in his being forced into a 3020-a arbitration were false and were pre-textually made by the Jusino in retaliation for Plaintiff coming to the aid of another teacher in the school.

The hearing started with a pre-hearing conference on February 22, 2018, and ended with a close of the record on October 9, 2018. Busto's Decision dated October 29, 2018, substantiated Specifications 1 (a)-(e), 3, and 4, and terminated Plaintiff. All of this was fraudulent and a

11

violation of tenure law 3020-a(2)(a) which protects the Plaintiff from exactly this type of revenge retaliation by the employer.

Plaintiff's due process rights were violated at his 3020-a hearing by the NYCDOE's failure to provide Plaintiff with material records from the Special Commissioner's Office of Investigation.  The NYC DOE was complicit in this, resulting in the denial of access to those records necessary to defend himself and substantiate his claims. In these reports were documents which could have supported his claim of retaliation, confirmed the timeline, and validate Plaintiff's testimony. Busto's *de novo* review of the matter is no substitute for the constitutional protections that the U.S. and New York State constitutions afford the accused in an arbitration proceeding.  From the very beginning of the proceedings the Plaintiff argued the necessity of obtaining those records and witnesses that the SCI group had, as germane to his claims but he was denied.

The Department knowingly and with malicious intent forced Plaintiff to proceed into a hearing that did not have a proper determination of probable cause. NYCDOE Executive Deputy Counsel and Defendant Charity Guerra deliberately denied Plaintiff his right to have a vote in an Executive Session to determine probable cause as required by Education Law 3020-a(2)(a), and Plaintiff was not given his contractual and lawful right to choose his arbitrator for his 3020-a hearing. Busto was chosen by the Department without Plaintiff's knowledge or consent.

Most shocking is the signature of Executive Superintendent Karen Watts on the charging paper with the title "Notice of Determination of Probable Cause Pursuant to Education Law Section 3020-a Charges". She signed this document on 3-15-2017 without any legal authority to do. Defendant Watts was aware of the bullying and harassment of Plaintiff by Jusino after Plaintiff supported an employee with whom he worked who was being investigated by SCI

12

in 2015.

On August 31, 2015, Plaintiff sent an email Defendant Watts explaining the retaliation by Jusino and asking for her support, but Defendant Watts only thanked him for bringing his concerns to her attention and that she would bring Plaintiff's complaints to SCI.

Defendant Mancuso knew, or should have known, of Plaintiff's compliance with the SCI Reporting Obligations and the Departments prohibition against retaliation, yet he supported the false and fraudulent statements made by Jusino against Plaintiff.

Due to the deliberate violation of Plaintiff's tenure protections by the Department, and the lucrative position of Arbitrator Felice Busto on the panel of Arbitrators hearing 3020-a cases, the Department was able to deny Plaintiff his right to a fair hearing as well as a proper determination of probable cause.

On or about June 22, 2021 Plaintiff became aware of the fraud underlying his Education Law 3020-a charges, specifically that there was no proper or lawful determination of probable cause and no vote by the Panel For Educational Policy in an Executive Session, resulting in an unlawful hearing where Arbitrator Felice Busto never had subject matter jurisdiction. Since Busto did not have subject matter jurisdiction over the charges submitted to her, she had no authority to proceed to a full hearing, nor did she have a lawful right to decide on any penalty.

### STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss brought pursuant to Rule 12(b)(6), the pleadings must contain enough facts to state a claim to relief that is plausible on its face." Dellatte v. Great Neck Union Free Sch. Dist., No. 10-cv-4348, 2012 WL 164078, at *1 (2d Cir.

13

Jan. 20, 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). The court must accept] all factual allegations in the complaint and draw] all reasonable inferences in the plaintiff's favor." Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008).

## ARGUMENT

## POINT I

## PLAINTIFF'S CLAIMS AND NOTICE OF CLAIM ARE TIMELY

Defendant's conclusory allegation that Plaintiff's claims are time-barred is simply untrue. Defendant claims in their Motion that: "[and a] cause of action under [§ 1983] is considered to have accrued when a plaintiff knows or has reason to know of the injury that serves as the basis for the action." And yet, "Since an actionable claim under § 1983 against a county or municipality depends on a harm stemming from the municipality's "policy or custom," see Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978), a cause of action against the municipality does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a county "policy or custom….Where no single act is sufficiently decisive to enable a person to realize that he has suffered a compensable injury, the cause of action may not accrue until the wrong becomes apparent." Id.

Plaintiff did not know that the charges he received in 2017 were procedurally deficient as a matter of law because the Defendant hid that information from him. The lack of an Executive Session is on the "Notice of Determination of Probable Cause" signed by Karen Watts (See Exhibit B-Notice of Charges and Specifications, Defendant's Motion). There is no date in the box labelled "Date of Executive Session" because the policy and custom of the

14

Defendant has been to not hold an Executive Session at all.  This defect in the charging of specifications for 3020-a is not discussed with any educator who is served.

Additionally, there was no information available to Plaintiff that could have informed him of the violation of Education Law 3020 and 3020-a.  In 2021 Plaintiff was informed of the lack of probable cause issue when discussing his case with a legal advocate who knew all about this issue and had worked on the Cardinale case several years earlier ("the DOE's failure to submit the charges against Petitioner to the employing board to determine whether probable cause existed constitutes a procedure defect depriving Hearing Officer Lendino of jurisdiction to consider the charges. Hearing Officer Lendino rejected Petitioner's argument, but this Court does not." Cardinale v NYC Department of Education, Index No. 85165/2017).

It was only in 2021 after Plaintiff sought employment in a school setting and he was denied numerous times did he learn about the Problem Code which blocked him from being hired.

This court recognizes an equitable tolling doctrine in the context of § 1983 actions, and when a "defendant fraudulently conceals the wrong, the time [limit of the statute of limitations] does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action." Keating v. Carey, 706 F.2d 377, 382 (2d Cir. 1983). To take advantage of this doctrine, however, a plaintiff must submit non-conclusory evidence of a conspiracy or other fraudulent wrong which precluded his possible discovery of the harms that he suffered. See, e.g., Dory v. Ryan, 999 F.2d 679, 681 (2d Cir.  1993) (tolling statute of limitations until time when plaintiff received an affidavit from a witness at his trial detailing the existence of a conspiracy by state officials to present perjurious testimony against plaintiff), modified on other grounds).

15

Here Plaintiff filed his Notice of Claim in September 2021, less than 90 days after finding out about the Cardinale case and the jurisdictional issues surrounding the policy and custom of the Department to omit any determination of probable cause by a vote in an Executive Session of the school board. Therefore, Plaintiffs Notice of Claim was timely, and his causes of action are timely as well.

## POINT II

### PLAINTIFF'S COMPLAINT PROPERLY PLEADS A
### FIRST AMENDMENT RETALIATION CLAIM

To set forth a prima facie case for First Amendment retaliation under Section 1983, Plaintiff must allege that (1) his speech was constitutionally protected; (2) he suffered an adverse employment action; and (3) a causal relationship between the two existed in that the speech was a substantial or motivating factor for the adverse employment action. Gronowski v. Spencer, 424 F.3d 285 (2d Cir. 2005). Plaintiff properly made those allegations in his Complaint.

Under FRCP 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). No Notice of Claim is required. Additionally, Plaintiff has satisfied his burden to prove - by submission of evidence - that he is not just making threadbare conclusions in his stated claims.

Rule 12(b)(6) provides that dismissal is appropriate if the complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Although the Court must accept all allegations in the Complaint as true, this tenet is "inapplicable to legal conclusions." Id. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). Ultimately, the Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679, 129 S. Ct. at 1950. Federal and state anti-discrimination statutes were enacted to protect different interests than Section 740. See D'Antonio v. Little Flower Children & Family Servs. of N.Y., 17-CV-1221, 2018 WL 1385897(E.D.N.Y. Mar. 19, 2018).

In deciding a motion to dismiss, the Court is generally confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, the Court may consider "any written instrument attached to [the complaint] as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (internal quotation marks and citation omitted); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (observing that a document is "integral" if the complaint "relies heavily upon its terms and effect") (internal quotation marks and citation omitted).

Plaintiff demonstrated in his Complaint that he engaged in speech protected by the First Amendment, that he suffered an adverse employment action, and that a causal connection between the two existed, "in that the speech was a substantial or motivating factor for the adverse

employment action." Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist., 411 F.3d 306, 313 (2d. Cir. 2005). The threshold inquiry in any First Amendment retaliation case is whether the employee was speaking as a citizen on a matter of public concern. Woodlock v. Orange Ulster B.O.C.E.S., 281 F. App 'x 66, 68 (2d. Cir. 2008) (quoting Garcetti v Ceballos, 547 U.S. 410, 418 (2006)). Plaintiff's speech is constitutionally protected if he was speaking both (1) as a citizen rather than pursuant to his employment duties, and (2) on a matter of public concern. Dorcely v. Wyandanch Union Free Sch. Dist., 665 F. Supp. 2d 178, 205 (E.D.N.Y. 2009) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). The inquiry into whether a public employee spoke pursuant to his official duties is "a practical one." Weintraub v. Bd. Of Ed. Of City Sch. Dist. of New York, 593 F.3d 196, 202 (2d Cir. 2010) (citing Garcetti, 547 U.S. at 424). Plaintiff was speaking out on a matter of public concern as a concerned citizen, not an employee of the school. Indeed, he knew that his reporting Jusino was against his interests, yet he felt compelled for the public good to speak out anyway.

On a motion to dismiss, a reasonable inference of a causal connection is all that is required. See Posr v. Court Officer Shield # 207, 180 F.3d 409, 418 (2d Cir.1999) ("[T]he plaintiffs pleading need not clearly establish that the defendant harbored retaliatory intent. It is sufficient to allege facts which could reasonably support an inference to that effect."); Rivera v. Cmty. Sch. Dist. Nine, 145 F.Supp.2d 302,309 (S.D.N.Y.2001). This "can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999). A court must "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of [each] particular case [ ]," Espinal v. Goard. 558 F.3d 119, 129 (2d Cir.2009). Where a Plaintiff

asserts enough direct evidence of retaliatory animus to create a triable question of fact on the issue of a causal connection as here, a longer lapse between the protected speech and the adverse employment action does not necessarily "conclusively establish lack of causation." See Mandel v. County of Suffolk, 316 F.3d 368, 384 (2nd Cir. 2003).

The Second Circuit has stated that speech is "pursuant to" an employee's official duties when it is "part-and-parcel" of the employee's concerns about his ability to "properly execute his duties," or when the speech is a "means to fulfill" and "undertaken in the course of performing…his primary employment responsibility..." Weintraub, 593 F.3d at 203–04 (holding that a teacher's grievance regarding classroom discipline was pursuant to his official duties because it was part-and-parcel of his concerns about his duty to properly execute his duties as a school teacher). "[U]nder the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." Anemone v. Metro. Transp. Auth, 629 F.3d 97, 116 (2d Cir. 2011) (citing Weintraub, 593 F.3d at 203). The existence of a relevant analogue to citizen speech bears on whether the speaker was acting as a citizen or pursuant to his employment. Id. at 203–04 (citing Garcetti, 547 U.S. at 422–23). With respect to the second prong, speech involves a matter of public concern if it was not calculated to redress personal grievances, but instead had a broader public purpose. Ruotolo, 514 F.3d at 189.

Reading the complaint broadly and drawing all reasonable inferences in Plaintiff's favor, the complaint alleges sufficient facts to state a plausible claim for retaliation.

## POINT III

## PLAINTIFF'S FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS AND EQUAL PROTECTION CLAIMS SHOULD NOT BE DISMISSED

19

Defendant argues that Plaintiff has failed to plausibly pleads a violation of procedural due process.  In opposition to this argument, Plaintiff argues that Arbitrator Busto lacked subject matter jurisdiction and Plaintiff did not, at any time, waive his rights to a hearing on §3020-a charges that must be presented to the Panel for Educational Policy (PEP) for a vote in Executive Session in compliance with Education Law 3020-a (2)(a).  The papers that were served on Plaintiff charging him with 3020-a misconduct had no date for the Executive Session and no vote on probable cause for his charges, which violates Education Law. See "Notice of Determination of Probable Cause on Education Law §3020-a Charges" Exhibit B, Defendant's Motion.  According to the Education Law §3020, Sections 1 and 2 of the Education Law §3020 ***cannot be bargained away or changed by fiat***. (emphasis added) See Education Law 3020(3)(iii):"(iii) the provisions of subdivisions one and two of this section shall not apply to agreements negotiated pursuant to this subdivision" . This renders all Delegation memos, including the Delegation Memo submitted here by Defendant, null and void. See Exhibit C, Defendant's Motion.

Furthermore, in the charges there are no documents which show that the New York State legislature signed or voted on any waiver of the procedures cited in Education Law 3020-a.  Defendant did not comply with Education Law 3020-a(2)(a), and thus denied Plaintiff the Constitutional rights and protections guaranteed in the tenure law to a proper determination of probable cause before being served charges. Felice Busto was then improperly hired by Defendant to terminate the Plaintiff. She served as arbitrator without any limits to her subjective opinion of his guilt or innocence, used documents relevant to a standard that Plaintiff had no knowledge about, and the charges were pursued without probable cause. An arbitrator who proceeds with a 3020-a arbitration where there is no probable cause cannot determine just cause

20

for penalties of any kind.

The alternate, unlawful procedure used by Defendant to omit any Executive Session should have stopped the §3020-a hearing from proceeding, however the Department went forward anyway, ignoring the omission of probable cause and keeping the error secret from the Plaintiff. Plaintiff's hearing should not have taken place with the procedural defect cited here. Hackett v. Milbank, Tweed, Hadley & McCloy, 86 N.Y.2d 146,154-55, 630 N.Y.S.2d 274,654 N.E.2d 95 [1995]. The Arbitrator should have adjourned any hearings until there had been a vote in an Executive Session by the school board and a proper determination of probable cause, or withdraw the charges. In Carnley v. Cochran, 369 U. S. 506 (1962), the Court held "[p]resuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not waiver." Id., at 516.  Additionally, a waiver of a teacher's tenure rights must be knowingly and freely given. Matter of Gould v. Bd. of Educ. of the Sewanhaka CHSD, et al., 184 A.D.2d 640, 584 N.Y.S.2d 910 (N.Y. App. Div. 1992); Matter of Abramovich v. Bd. of Educ. of the Three Villages CSD No. 1, 46 NY2d 450. Tenured teachers have a property and liberty right to their jobs, and therefore when there is any penalty that reduces the benefits of these rights, there must be Just Cause. In Plaintiff's 3020-a there was no Just Cause to proceed with the 3020-a arbitration as the procedural error has not been explained nor remedied.

Judge Desmond Green in the Richmond County Supreme Court ruled in the case of Rosalie Cardinale that "New York State created the public-school tenure system guaranteeing continued employment to tenured teachers by statute and therefore created a property right in a tenured teacher's continued employment. (See Education Law §§§ 3012, 3012- a, 3020, Holt v.

21

Board of Educ. Of Webutuck Cent. School Dist., 52 NY2d 625 [1981], Matter of Abromvich v. Board of Educ. of Cent. School Dist. No. I of Towns of Brookhaven & Smithtown, 46 NY2d 450 [1979]). Where a property right in continued employment exists, such as New York's tenure system, the recipient of such a right may not be deprived without due process. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 [1985]"

Judge Green added, "New York State guarantees a tenured teacher's due process to continued employment by statute requiring that "no [tenured teacher] ... shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article or in accordance with alternate disciplinary procedures contained in a collective bargaining agreement ... " [Education Law § 3020]."  The statutory procedural process afforded to teachers with tenure under Education Law §3020-a requires the filing of charges "in writing and filed with the clerk or secretary for the school district or employing board during the period between the actual opening and closing of the school year for which the employed is normally required to serve. [Education Law§3020-a(l)]".....Education Law § 3020-a(2) states that within five days after receipt of charges, the employing board, in executive session, shall determine, by a vote of a majority of all the members of such board, whether probable cause exists to bring a disciplinary proceeding against the employee pursuant to this section." [Education Law § 3020-a(2)].....Where an employing board determines probable cause exists for discipline, the tenured teacher shall receive "a written statement specifying (i) the charges in detail, (ii) the maximum penalty which will be imposed by the board if the employee does not request a hearing or that will be sought by the board if the employee is found guilty of the charges after a hearing and (iii) the employee's rights under this section, shall be immediately forwarded to the accused

22

employee " Id.

Green summarized his conclusion that there was a procedural error of law "Hearing Officer Lendino conducted the Education Law § 3020-a hearing based on unproven assumptions that the delegations of duties and responsibilities from the office of the Chancellor to subordinate administrators occurred in compliance with the relevant statutory authority." This decision was overturned on appeal to the Second Department, however Education Law §3020 was never submitted in any of the papers seen at the Appellate level, therefore the Appellate Court made an error of law in overturning Judge Green as the submission did not have the appropriate law contained in them.  As cited above and submitted here as part of Plaintiff's denial of due process, Sections 1 and 2 of the Education Law §3020 cannot be bargained away or changed by fiat. (emphasis added) See Education Law §3020 (3)(iii). And the many so-called "Delegation Memos" submitted by the Department in previous §3020-a proceedings and here, are nothing more than unproven assumptions as well as diversions not based on relevant statutory authority.

These memos, submitted without basis in law, have been processed by the Department and submitted in these hearings to give arbitrators the unlawful right to proceed with the 3020-a arbitration without statutory law or subject matter jurisdiction. None of the Delegation memos mention "Probable Cause", nor "3020-a". This argument by Defendant in this matter is misleading and the information that in New York City the determination of probable cause may be made by delegation from the Chancellor to the Superintendents and from the Superintendents to the principals is simply, and clearly, erroneous.

Education Law §3020-a(2)(a) gives the authority to vote on all issues presented to the NYC school board, the Panel For Educational Policy, to the members of the PEP, and all

23

personnel matters to the members of the PEP in an Executive Session. The Chancellor has no

voting rights on any matter brought to the PEP.  A review of Education Law §2590 which state

the duties and responsibilities of the Chancellor, reveals that no delegation of probable cause

can legally be made by him/her.  Education Law §2590-f(t) states:

> "(t) notwithstanding any provisions of law to the contrary, to exercise all of the duties
> and responsibilities of the employing board as set forth in section three thousand
> twenty-a of this chapter pursuant to a delegation of the chancellor under section
> twenty-five hundred ninety-h of this article……" (emphasis added)

Education Law §2590-h states:

> "The office of chancellor of the city district is hereby continued. Such chancellor shall
> serve at the pleasure of and be employed by the mayor of the city of New York by
> contract. The length of such contract shall not exceed by more than two years the term
> of office of the mayor authorizing such contract. The chancellor shall receive a salary to
> be fixed by the mayor within the budgetary allocation therefor. He or she shall exercise
> all his or her powers and duties in a manner not inconsistent with the city-wide
> educational policies of the city board. …"

The intent of the NY State legislature was clear: keep an eye on these procedures and keep the

Chancellor from managing the entire process of teacher discipline by him/herself.

No NYC Chancellor has the authority to determine probable cause, only to initiate the charging

process without making any conclusions.  Initiating or "preferring" charges is not the same as

determining probable cause. Thus the Chancellor has no authority to determine probable cause

for §3020-a charges or to delegate this authority to anyone else. This is the mandate of the New

York State legislature, a legislative body which deliberately placed the three-step procedures for

charging tenured employees into Education Law 3020-a(2)(a) as a foundation of the protections

guaranteed by tenure law.

Any reasoning that "initiating" or "preferring" charges, which the Chancellor may do

and delegate, is the same as determining probable cause for those same charges is not rational

24

and wrong. It is clear that a decision of an Arbitrator who proceeds without getting a signed waiver from an accused educator (Plaintiff) shows bias against the [Plaintiff] and an excess of authority that is not sanctioned by any statutory authority.

The requirements of NYS Education Law §3020-a, under which tenured personnel may be disciplined for "just cause" are absolute and require that before charges can be brought against a tenured educator, the school board, the PEP, must: determine that there is "probable cause" for the proceeding with charges by a majority vote by the Board, make this determination within 5 days of the charges being filed with the Board and ensure that the decision to proceed with the charges is not frivolous arbitrary, capricious or discriminatory.

The legislative intent is to provide pedagogues protection from vindictive principals who may want to remove senior teachers from their positions for random, arbitrary or capricious reasons. Thus, Education Law §3020-a(2)(a) is an important part of the efforts of legislators to maintain a check and balance of power in NY State governance and policy. As stated by New York's Court of Appeals in Ricca v. Board of Ed. of the City Sch. Dist, 47 N.Y.2d 385, 418 N.Y.S.2d 345 (1979):

> "The tenure system is not an arbitrary mechanism designed to allow a school board to readily evade its mandate by the creation of technical obstacles. . . .rather it is a legislative expression of a firm public policy determination that the interests of the public in the education of our youth can best be served by a system designed to foster academic freedom in our schools and to protect competent teachers from the abuses they might be subjected to if they could be dismissed at the whim of their supervisors. In order to effectuate these convergent purposes, it is necessary to construe the tenure system broadly in favor of the teacher, and to strictly police procedures which might result in the corruption of that system by manipulation of the requirements for tenure."

Additionally, N.Y. Municipal Home Rule Section 11(1)(c) states as follows:

"No local legislative body is empowered to enact laws or regulations which supersede state statutes, particularly with regard to the maintenance, support, or administration of the

25

educational system."  In the Matter of Stephen Rosenblum, v New York City Conflicts of

Interest Board et al., 75 A.D.3d 426; 903 N.Y.S.2d 228; 2010 N.Y. App. Div. LEXIS 5749;

2010 NY Slip Op 5875, the First Department Appellate Division held that the New York State

Supreme Court ruling was correct, that "the exclusive avenue to discipline a tenured pedagogue

is Education Law § 3020-a "(see Education Law § 3020).

The statutory procedures for filing charges against Plaintiff in his 3020-a arbitration

were completely disregarded in this case and his tenure rights were not protected. See: Matter of

Schumer v. Holtzman, 60 N.Y. 2d 46, 51.  Finally, when interpreting a statute, "our primary

consideration is to discern and give effect to the Legislature's intention" (Matter of Albany Law

School v. New York State Office. of Mental Retardation & Dev. Disabilities, 19 N.Y.3d 106,

120, 945 N.Y.S.2d 613, 968 N.E.2d 967 [2012]). The text of a statute is the "clearest indicator"

of such legislative intent and "courts should construe unambiguous language to give effect to its

plain meaning" (Matter of DaimlerChrysler Corp. v. Spitzer, 7 N.Y.3d 653, 660, 827 N.Y.S.2d

88, 860 N.E.2d 705 [2006]). We have also previously instructed that "[i]t is an accepted rule

that all parts of a statute are intended to be given effect and that a statutory construction which

renders one part meaningless should be avoided" ( Rocovich v. Consolidated Edison Co., 78

N.Y.2d 509, 515, 577 N.Y.S.2d 219, 583 N.E.2d 932 [1991]). Furthermore, "a statute ... must

be construed as a whole and ... its various sections must be considered together and with

reference to each other" (Matter of New York County Lawyers' Assn. v. Bloomberg, 19 N.Y.3d

712, 721, 955 N.Y.S.2d 835, 979 N.E.2d 1162 [2012] ).

As held in Matter of City of New York (228 N.Y. 140, 152, 126 N.E. 809 [1920])

which involved New York City's right to alienate piers and wharves held in the public trust,

"[w]hen there is a fair, reasonable and substantial doubt concerning the existence of an alleged

26

power in a municipality, the power should be denied"

In sum, the Department's Motion To Dismiss lacks any substantive opposition to the continued mandate of Education Law §§3020 and 3020-a(2)(a) to file and serve charges only after an Executive Session of the Panel for Educational Policy (PEP) and a vote on probable cause has taken place. The Department deliberately and knowingly gives a false analysis of Plaintiff's arguments submitted in this case. See Order of Judge Gina Abadi in the case of Kambouris v NYC Department of Education Index No. 518863/2022, attached as **EXHIBIT 1**.

In this matter Plaintiff's arguments concerning his lack of due process does ***not*** rely on the Cardinale decision, which concerned the Delegation Memos only. These proceedings are based upon Education Law §3020 and §3020-a, and this addition of §3020 is key to why the arguments here are not similar to those in the Cardinale case.

Clearly the Defendant is wrong in alleging that teachers in New York City no longer have the right to get an Executive Session and vote before being charged with 3020-a. Education Law §3020 and §3020-a have never been changed. See Education Law 2590-j(7)(a) which states "No member of the teaching or supervisory staff of schools who has served the full and appropriate probationary period prescribed by, or in accordance with law, shall be found guilty of any charges except after a hearing as provided by section three thousand twenty-a of this chapter." According to Education Law 2590 (7)(b) "Charges may be initiated by the community superintendent against any such employee for any of the following offenses unauthorized absence from duty or excessive lateness; neglect of duty; conduct unbecoming his position, or conduct prejudicial to the good order, efficiency or discipline of the service; incompetent or inefficient service; a violation of the by-laws, rules or regulations of the city board, chancellor, or the community board; or any substantial cause that renders the employee

27

unfit to perform his obligations properly to the service.  Education Law 2590 (7)(b) goes on to

state that the community superintendent, in advance of the filing of charges and specifications,

shall inform the employee accused and the community board of the nature of the complaint.

Nowhere is there any mention of determining probable cause. That right is solely

given to the PEP. The "Initiating charges" language only refers to the sending of the charges to

the school board, which in NYC is the PEP, whose job it is to hold an Executive Session and

vote on probable cause for the charges.

      Another case that is relevant here is the Matter of Garzilli v Mills with states that,

> "In November 1997, respondent Superintendent of CSD 12 (hereinafter the
> Superintendent) found that probable cause existed and preferred disciplinary charges
> against petitioner pursuant to Education Law §3020-a; the charges brought against
> petitioner included six specifications alleging excessive lateness and absences. Petitioner
> thereafter requested a hearing on the charges and further requested that respondent State
> Commissioner of Education (hereinafter the Commissioner) not proceed with the charges
> because the CSD 12 Board did not conduct a probable cause vote as required by
> Education Law § 3020-a." The Supreme Court found that the Superintendent did not have
> the authority to make determinations of probable cause:
> "Education Law § 2590-f (1) (c) (as amended by L 1996, ch 720, § 5) specifically granted
> community superintendents the authority "to appoint, define the duties of, assign,
> promote and discharge all employees….
>
> "Supreme Court properly concluded that, as it was within the province of the Legislature
> to amend Education Law § 3020-a and/or section §2590-j, in the absence of such changes
> the community school boards continued to have "the sole power and duty to make
> determinations of probable cause" and that "[n]o such authority [was] granted to
> community superintendents under the 1996 amendments to the Education Law." and,
>
> "We agree with Supreme Court's observation that "a proper determination of probable
> cause is an essential jurisdictional predicate to disciplinary charges" and analogous to the
> proper designation of a Hearing Officer (see, e.g., Matter of Wiggins v. Board of Educ.,
> 60 N.Y.2d 385, 387; Matter of Perez v. New York State Dept. of Labor, 244 A.D.2d
> 844)."

**See** Matter of Garzilli v Mills annexed hereto as **Exhibit 2**

      The Appellate Court went on to conclude that the Superintendent did not have the

28

authority to determine probable cause and that "we nonetheless conclude that chapter 385 falls short of curing the jurisdictionally defective finding of probable cause". The Court affirmed the Judgment of the Supreme Court effective until the State legislature changed the determination of probable cause procedure in chapter 385 of the Laws of 1998. This change to Education Law Sections 1 and 2 never occurred.

Defendant's promotion of Education Law §2590-h Sections (19) and (38-a) which supposedly gives the "Chancellor "the authority to bring the charges against a tenured pedagogue (as the employing board) and gives the Chancellor the authority to delegate that power to other employees, including principals is erroneous. Nonetheless, neither §§2590-h(19) nor (38-a) says anything about probable cause determination, so the Department's argument on this point should be discarded. The arguments made in Defendant's Motion must be rejected.

Where a property right in continued employment exists, such as New York's tenure system, the recipient of such a right may not be deprived without due process. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 [1985]. In the City of New York, the Panel for Educational Policy ("PEP") serves as the "school board". The statutory procedures for filing charges against Plaintiff were completely disregarded and his tenure rights were not protected. Compliance with Education Law §3020-a(2)(a) is a jurisdictional condition precedent to a §3020-a disciplinary hearing. Without it, the hearing should not have moved forward. Prohibition is the appropriate procedural remedy for the assertion of Plaintiff's claim where prohibition is available "to prevent a body or officer from proceeding or threatening to proceed without or in excess of its jurisdiction." See: Matter of Schumer v. Holtzman, 60 N.Y. 2d 46, 51.

29

Moreover, because the Chancellor has no vote as a member of the Panel for Educational Policy, he/she lacks the authority to grant any individual the authority to make a probable cause determination. Even if the Chancellor had been given the duties of the school board, this would still mandate a vote in an Executive Session before any charges were served on Plaintiff. This did not happen. The charging papers had no date for the Executive Session taking place at any time and the Plaintiff has never waived his right to a hearing pursuant to the Education Law 3020-a 2(a).

The statutory procedures for filing charges against Plaintiff were completely disregarded and his tenure rights were not protected. Compliance with Education Law 3020-a(2)(a) is a jurisdictional condition precedent to a §3020-a disciplinary hearing. The Motion To Dismiss presented here by Defendants cannot be granted.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. Plyler v. Doe, 457 U.S. 202, 216 (1982).Section 5 of the Amendment empowers Congress to enforce this mandate, but absent controlling congressional direction, the courts have themselves devised standards for determining the validity of state legislation or other official action that is challenged as denying equal protection. The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.

Plaintiff has successfully alleged an equal protection cause of action under a selective enforcement theory of liability. The courts within the Second Circuit are divided whether such a selective enforcement is permitted in the wake of the United States Supreme Court in Engquist

v. Oregon Dep't of Agr., 553 U.S. 591 (2008), (held that "class of one" claims no longer exist in

a public employment setting); Gentile v. Nulty. 769 F. Supp. 2d 573, 583 (S.D.N.Y. 2011);

citing Kamholtz v. Yates County, 350 Fed.Appx. 589, 591 (2d Cir.2009), Faulks v. City of

Hartford. 2010 WL 259076, at *7 (D.Conn. 2010), Sloup v. Loeffler, 2008 WL 3978208, at *14

n. 18 (E.D.N.Y. 2008).

  Outside of New York City a proper determination of probable cause is mandatory and

cannot be denied to any tenured educator brought to 3020-a arbitration and/or terminated. The

elements of a selective enforcement cause of action are "(1) that [s]he was treated differently

from others similarly situated, and (2) that such differential treatment was based on

impermissible considerations such as race, religion, intent to inhibit or punish the exercise of

constitutional rights, or malicious or bad faith intent to injure a person." Fierro v. New York

City Dep't of Educ., 994 F. Supp. 2d 581, 592-93 (S.D.N.Y. 2014), appeal dismissed (Apr. 9,

2014). quoting Gentile, 769 F.Supp.2d at 578. Here, there was clearly a hostile environment at

Plaintiff's school due to Principal Jusino retaliating against the Plaintiff for his advocacy for

members of the staff.

  It is without a doubt that the Plaintiff has successfully alleged the necessary elements

of a selective enforcement of the Education Law processes behind teacher discipline outcomes.

With regard to the first element, similarly situated individuals, a plaintiff need not provide

evidence of similarly situated individuals at the motion to dismiss stage, so long as the facts as

alleged to permit a jury to conclude that they are similarly situated. Vaher v. Town of

Orangetown, N.Y., 916 F. Supp. 2d 404, 434-35 (S.D.N.Y. 2013), citing Mosdos Chofetz

Chaim. Inc. v. Vill. of Wesley Hills, 815 F. Supp. 2d 679,697 (S.D.N.Y. 2011).

  As to the second element of the selective enforcement cause of action, it is without a

doubt that Plaintiff has successfully alleged that the differing treatment by the Defendant was in order to punish the Plaintiff for exercising his First Amendment rights as a whistleblower and was done maliciously and with the bad faith intent to harm him. Thus, it is clear that Plaintiff has successfully alleged a selective enforcement cause of action that must survive as a matter of law. Plaintiff has also sufficiently alleged a Due Process cause of action, as he, a tenured teacher, has a constitutionally protected property interest in his employment. Plaintiff also has a constitutional property interest in his educational licenses, which were effectively taken away through the Defendants' campaign to blacklist the Plaintiff in the field of public education, with a "problem code". Mudge v. Zugalla, 2014 WL 2453353, at *8 (N.D.N.Y. June 2, 2014).

In the instant action, Plaintiff has clearly alleged that the Defendant has engaged in a systematic campaign to blacklist him with the intention of preventing him from finding employment in the field of education. He has a problem code on his personnel file which prevents him from using his licenses to teach in NYC. The inability to find work within the field of public education also implicates the loss of his constitutional property right in his educational licenses.

Thus, Plaintiff's due process property claims must survive as a matter of law. In order to successfully allege a claim for a substantive due process violation, it must be alleged that the government action being challenged was "arbitrary, conscience shocking, or oppressive in a constitutional sense. Substantive due process does not protect against government action that is incorrect or ill-advised. While there is no clear standard for what actions are deemed conscience shocking, it has been held that it stems from actions that are "malicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience.

32

Such acts by their very nature offend our fundamental democratic notions of fair play, ordered liberty and human decency." Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 251-52 (2d Cir. 2001), citing City of Sacramento v. Lewis, 523 U.S. 833, 847 (1998), Breithaupt v. Abram, 352 U.S. 432,435 (1957).

The claims contained within the four corners of Plaintiff's Complaint go straight to the heart of a substantive due process claim. The very idea that a person's livelihood through tenure, which is supposed to be determined through a fair evaluation of an educator's job performance, is denied in open and blatant retaliation for reporting illegalities and improprieties within public education absolutely offends the notations of fair play and shocks the conscience. There is no reasonable interpretation of the actions alleged within the Complaint that would result in the malicious targeting of a whistleblower as being merely "incorrect or ill advised." Even if such a definition is up for debate, it is inapplicable in a motion to dismiss stage and a simple reading of the Complaint amply demonstrates that conscience shocking behavior has been sufficiently alleged to permit this cause of action to continue through to discovery as a matter of law.

Plaintiff has a cause of action for due process violations, and the harm done to him after being terminated by an arbitrator who never had subject matter jurisdiction to give any penalty. Plaintiff's Complaint, causes of action, and his Notice of Claim were timely filed, as are his 1983 and 14th Amendment causes of action. The Defendant's Motion to Dismiss should be denied.

To date of Plaintiff's arguments herein have never been heard by any Court. His Article 75 Appeal of Arbitrator Busto's decision terminating him was not filed in a timely fashion under by CPLR 7511. Plaintiff's case was never heard on the merits and was untimely.

33

**POINT IV**

**PLAINTIFF HAS ADEQUATELY PLED FRAUD**

The Court has the authority to exercise pendent jurisdiction over state law claims that stem from a "common nucleus of operative fact". Moore v. County of Suffolk, 851 F.Supp.2d 447,458 (E.D.N.Y. 2012). Constitutional claims are sufficient to support jurisdiction over pendent state law claims when the constitutional claim are not wholly insubstantial or obviously frivolous. Id. Here, the Plaintiff's constitutional causes of action, namely violation of due process rights and violation of public policy under color of law, are sufficiently alleged within the Amended Complaint to allow for continued survival of the state law claims. Since the court has original jurisdiction to hear the federal claims asserted by Plaintiff, it should also exercise its right to supplemental jurisdiction to hear the state claims.

The tort of Fraud and deceit has a six-year statute of limitations and contains an allowance for filing a claim recognizing fraud within two years of becoming aware of the wrongdoing. The elements of fraud are a material misrepresentation of fact and omission; knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages. New York City Transit Authority v Morris J. Eisen, P.C., 276 A.D.2d 78, 85, 715 N.Y.S.2d 232, 237 (N.Y. App. Div., 1st Dep't 2000)[1-5].

On or about June 22, 2021 Plaintiff became aware of the fraud underlying his Education Law 3020-a charges, specifically that there was no proper or lawful determination of probable cause and no vote by the Panel For Educational Policy in an Executive Session, resulting in an unlawful hearing where Arbitrator Felice Busto never had subject matter jurisdiction. Since Busto did not have subject matter jurisdiction over the charges submitted to

34

her, she had no authority to proceed to a full hearing, nor did she have a lawful right to decide on any penalty.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' respectfully request that the Court deny Defendants' motion to dismiss the Complaint, together with such other and further relief as the Court deems just and proper.

Dated:     March 23, 2023
           New York, New York

                                        **<u>/s/ D. Christopher Mason</u>**

                                         D. Christopher Mason

35

At an IAS Term, City Part 22 of the
Supreme Court of the State of New York,
held in and for the County of Kings, at the
Courthouse thereof at 360 Adams St.,
Brooklyn, New York on the 19th day of
December 2022.

P R E S E N T :

HON. GINA ABADI,
J.S.C.

---

MELANIE KAMBOURIS, AMANDA SEMEL, ANDREW
FOSSATTI, ANNA STITHOS, CANDICE WITTMER,
CATHERINE PETRONE, COURTNEY KASSEBAUM,
DANIELLE ELAZEH, DANIELLE CALAPAI, DIANA
HARRISON, ERICA WILHELM, ERIETA MYFTARAJ,
GENEVIEVE GIOELI, GREGORY MAST, HENNA
FOSSATTI, JACQUELINE LANGONE, JENA FORGIONE,
JENNIFER VILLALTA, JENNIFER FICETO, JESSICA
MAST, KIM MARINELLI, LAUREN HORAN, LISA
IRVINE, MARSIDA ASHAFI, STEFANIE RUDE,
SUZANNA CIANCI, TIFFANY KLEIN, VICKY STITHOS,
RESMIGE GIOVANNA, KATHERINE GANIARIS,

                                Petitioners,

         -against-

NEW YORK CITY DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK, DAVID C. BANKS, in his
Official capacity as Chancellor and DANIEL WEISBERG in
his official capacity as First Deputy Chancellor,

                                Respondents.

Index No.: 518863/2022
Motion Seq: 1 & 2

DECISION/ORDER

---

Recitation, as required by CPLR § 2219(a), of the papers considered in the review of this motion:

| Papers | NYSCEF Numbered |
|---|---|
| Notice of Motion/Cross Motion/Order to Show Cause and Affidavits (Affirmations) Annexed.................................. | 3 - 38, 48, 49-57, 59 |
| Opposing Affidavits (Affirmations)................................... | 42 - 46, 58 |
| Reply Affidavits (Affirmations)..................................... | 47 |

      Upon the foregoing papers in this hybrid special proceeding pursuant to CPLR Articles

78 and 63 seeking declaratory and injunctive relief, petitioners move by order to show cause

FILED: KINGS COUNTY CLERK 12/30/2022
NYSCEF DOC. NO. 61

Case 1:22-cv-04163-ENV-RML   Document 17   Filed 05/18/23   Page 38 of 53 PageID #: 184
INDEX NO. 518863/2022
RECEIVED NYSCEF: 01/05/2023

(OSC), motion sequence 1, for: 1) a declaratory judgment finding that respondent New York City Department of Education (DOE) violated tenured petitioners' rights pursuant to Education Law [EL] §§ 3020 and 3020-a; 2) a declaratory judgment that the DOE's determination deprived petitioners of property without due process of law guaranteed under article 1 section 6 of the New York State Constitution; 3) a declaratory judgment that the DOE took disciplinary action without a just cause; 4) a declaratory judgment that the DOE's determination is null, void, and unenforceable; 5) a temporary, preliminary, and permanent injunction enjoining the DOE from enforcing the determination; 6) a temporary restraining order and a preliminary injunction reinstating petitioners, unless, and until, the DOE lawfully commences disciplinary proceedings; 7) a declaratory judgment that the DOE took disciplinary action in violation of lawful procedure pursuant to CPLR 7803; and 8) an award of back pay and any other compensation petitioners would have received but for the DOE's determination. By subsequent OSC, motion sequence 2, petitioners seek: 1) a temporary restraining order staying the DOE's determination to assign petitioners to reassignment centers; 2) a temporary restraining order staying the DOE from altering petitioners' employment status that they had prior to April 19, 2022, unless, and until, the DOE commences disciplinary proceedings set forth in EL §§ 3020, 3020-a, and in accordance with petitioners' due process rights guaranteed under NY Const. art I, § 6; 3) a preliminary and permanent injunction annulling the DOE's determination to reassign petitioners; 4) a preliminary injunction reinstating petitioners; and 5) attorneys' fees and costs.

### *Factual and Procedural Background*

The 30 petitioners in this proceeding are employees of the DOE, 27 of whom are teachers or school professionals with tenure. On August 24, 2021, Dr. Dave A. Chokshi, Commissioner of the New York City Department of Health and Mental Hygiene, issued an order (Vaccine

2

Case 1:22-cv-04163-ENV-RML Document 17 Filed 05/18/23 Page 39 of 53 PageID #: 185

Mandate Order) requiring all employees of the DOE to submit proof, by September 27, 2021, that they were fully vaccinated against Covid-19; or received a single dose vaccine, or the second dose of a two-dose vaccine; or received the first dose of a two-dose vaccine, with the additional requirement to provide proof of the second dose thereafter. Petitioners thereafter submitted purported proof of compliance with the Vaccine Mandate Order by uploading to the relevant DOE web portal CDC Covid-19 Vaccination Record Cards (Vaccination Cards) indicating receipt of the vaccine.

Following submission of the Vaccination Cards, petitioners received an e-mail from the DOE, dated April 19, 2022, which stated:

> "We have received information that the proof of vaccination that you uploaded to the DOE Vaccine Portal, pursuant to the New York City Health Commissioner's Order requiring vaccination of all NYCDOE staff, was fraudulent. Compliance with that Order is a condition of NYCDOE employment. Since we have reason to believe that you have not complied with that Order, effective Monday, April 25, 2022, **you are being placed on Leave Without Pay** with benefits until further notice. You should not report to your school/work location after the April vacation and your school/office will be notified of this change in your status" (emphasis in original).

NYSCEF Docs No 5 and 45.

According to the DOE, the Special Commissioner of Investigation for the New York City School District ("SCI") informed the DOE's Division of Human Resources ("DHR") of a list of DOE employees "implicated" in a "fraudulent vaccination operation investigation, for whom SCI had determined that there was a high probability that they had not in fact received required vaccinations," contrary to the information the employees had submitted to the DOE. *See* Affidavit of Mallory O. Sullivan, NYSCEF Doc No 44. In his affidavit, SCI Deputy Commissioner Gerald P. Conroy avers that while the Vaccination Cards submitted by these

3

employees "purport to show that the employees received the required COVID-19 vaccination. . .

evidence obtained by SCI to date demonstrates that this is very likely to be untrue." Conroy

states that his affidavit is based "upon personal knowledge and upon information and belief, the

sources being the files of [SCI], documents obtained from the DOE, the New York State

Department of Health (pursuant to an SCI subpoena), two district attorneys' offices within the

State of New York, as well as conversations with representatives of the aforementioned offices

and four additional law enforcement agencies." Affidavit of Gerald P. Conroy, NYSCEF Doc No

45.

The placement of petitioners on leave without pay resulted in the filing of the instant

Article 78 petition along with the initial OSC, motion sequence 1, setting forth petitioners'

request for declaratory and injunctive relief, including reinstatement to their assignments with

pay. The OSC, motion sequence 1, was signed on July 1, 2022 by Justice Karen B. Rothenberg.

On or about August 8, 2022, the DOE sent each petitioner an e-mail stating:

> "We are writing with an update to the prior notice you received
> regarding the proof of vaccination that you uploaded to the DOE
> Vaccine Portal.

> "Effective September 6, 2022, you will be returned to payroll.
> Upon your return, NYCDOE will conduct an internal investigation
> related to whether the proof that you uploaded is fraudulent.

> "You will be reassigned during the pendency of such investigation.
> This assignment is pending; please check your email on or after
> September 1, 2022 for directions on where to report."

NYSCEF Doc No 54.

Following petitioners reassignment, petitioners brought a subsequent OSC, motion

sequence 2, seeking a preliminary and permanent injunction annulling the DOE's determination

reassigning petitioners pending investigation of the validity of their Vaccination

4

Case 1:22-cv-04163-ENV-RML   Document 17   Filed 05/18/23   Page 41 of 53 PageID #: 187

INDEX NO. 518863/2022

RECEIVED NYSCEF: 01/05/2023

Cards and to restore petitioners to their previous assignments. The OSC, motion sequence 2, was signed by Justice Richard Velasquez on August 30, 2022 and did not grant the preliminary injunction.

### *Discussion*

In an article 78 proceeding, the court considers "only whether the determination was made in violation of lawful procedure, was affected by an error of law, was arbitrary and capricious, or was an abuse of discretion." *Matter of Halpert v Shah*, 107 AD3d 800, 801 (2d Dept 2013; *see* CPLR § 7803(3); *Matter of Ward v City of Long Beach*, 20 NY3d 1042 (2013); *Matter of Halperin v City of New Rochelle*, 24 AD3d 768, 770 (2d Dept 2005). "Under this standard, courts examine whether the action taken by the agency has a rational basis and will overturn that action only where it is taken without sound basis in reason or regard to the facts, or where it is arbitrary and capricious." *Matter of Halpert*, 107 AD3d at 801-802 (citations and internal quotation marks omitted); *see Matter of Wooley v New York State Dept. of Correctional Servs.*, 15 NY3d 275, 280 (2010); *Matter of Peckham v Calogero*, 12 NY3d 424, 431 (2009); *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 232 (1974); *Matter of Deerpark Farms, LLC v Agricultural & Farmland Protection Bd. of Orange County*, 70 AD3d 1037, 1038 (2d Dept 2010).

In addition, the decision to grant or deny an injunction lies within the sound discretion of the Supreme Court. *See Congregation Erech Shai Bais Yosef, Inc. v Werzberger*, 189 AD3d 1165, 1166-1167 (2d Dept 2020); *Matter of Goldfarb v Ramapo*, 167 AD3d 1009, 1010 (2d Dept 2018). "A permanent injunction is a drastic remedy which may be granted only where the plaintiff demonstrates that it will suffer irreparable harm absent the injunction." *144-80 Realty*

5

Case 1:22-cv-04163-ENV-RML   Document 17   Filed 05/18/23   Page 42 of 53 PageID #: 188

*Assocs. v 144-80 Sanford Apartment Corp.,* 193 AD3d 723, 725 (2d Dept 2021) quoting *Merkos L'Inyonei Chinuch, Inc. v Sharf,* 59 AD3d 403, 408 (2d Dept 2009); *see Icy Splash Food & Beverage, Inc., v Henckel,* 14 AD3d 595, 596 (2d Dept 2005). Moreover, "[i]njunctive relief is to be invoked only to give protection for the future . . . to prevent repeated violations, threatened or probable, of the [parties'] rights." *Swartz v Swartz*, 145 AD3d 818, 828-29 (2d Dept 2016) (internal quotation marks and citations omitted); *see Merkos L'Inyonei Chinuch, Inc. v Sharf,* 59 AD3d at 408.

Here, the essential argument of petitioners is that the determinations of the DOE, in both placing them on leave without pay and further assigning them to a reassignment center, or "rubber room" rather than the classroom was arbitrary and capricious and contrary to law insofar as these actions constituted disciplinary actions without affording petitioners their due process rights pursuant to EL §§ 3020, 3020-a and the New York State Constitution.

EL § 3020 provides, in relevant part:

> "1. No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article or in accordance with alternate disciplinary procedures contained in a collective bargaining agreement covering his or her terms and conditions of employment."

EL § 3020-a provides the exclusive method of disciplining a tenured teacher in New York and requires the filing of charges (EL § 3020-a [1]), a determination of whether probable cause exists to bring a disciplinary proceeding (EL § 3020-a [2]) and a hearing before an arbitrator (EL § 3020-a [3]) prior to the imposition of "a reprimand, a fine, suspension for a fixed time without pay or dismissal." EL § 3020-a (4).

6

Contrary to the DOE's argument, the reassignment of the petitioners *with pay* does not render the petition and original OSC moot, as petitioners seek, in the second OSC as well as the original OSC, reinstatement of petitioners' employment status and assignments that they held prior to April 19, 2022, unless, and until, respondents commence disciplinary proceedings as set forth in EL §§ 3020 and 3020-a. In this matter, the reassignments did not involve transfers to similar teaching positions at other locations or assignments which involved the application of petitioners' areas of expertise. Instead, the reassignments were made to centers where, according to one petitioner, teachers are given "tedious" and "mindless" assignments and tasks. Affidavit of Melanie Kambouris, NYSCEF Doc No. 55. The reassignment was not made pending a hearing on specified charges,[1] even though the DOE made a clear accusation of wrongdoing by the petitioners. Thus, the court finds that, in this instance, the reassignments constitute a form of discipline which may only be effectuated pursuant to the procedures of EL §§ 3020 and 3020-a.[2]

The DOE likewise cannot skirt the disciplinary procedure requirements by claiming that petitioners failed to meet a condition of employment in failing or refusing to be vaccinated. Courts have indicated that the dismissal of New York City employees or placement of the employees on leave without pay for failure to comply with the Vaccine Mandate Order, without first undergoing statutory disciplinary procedures, is permissible since non-vaccination constitutes a failure to satisfy a "condition of employment" as opposed to misconduct. *See New York City Mun. Labor Comm. v City of New York*, 75 Misc 3d 411, 415 (Sup Ct., NY County) ("all of the statutes which plaintiffs point to prescribe the procedures for removal of a protected

---

[1] Placement of a tenured teacher in a reassignment center is not dissimilar to a suspension with pay, which is allowable "pending a hearing on the charges and the final determination thereof." EL § 3020-a (2)(b).

[2] To the extent the court in *Matter of McElroy v Board of Educ. of Bellmore-Merrick Cent. High School Dist.*, 5 Misc 3d 321 (Sup Ct, Nassau County 2004), determined that the reassignments of the petitioners therein did not amount to discipline, this court is not bound by a court of coordinate jurisdiction and the facts of said case are otherwise distinguishable from this matter.

7

Case 1:22-cv-04163-ENV-RML   Document 17   Filed 05/18/23   Page 44 of 53 PageID #: 190

INDEX NO. 518863/2022

RECEIVED NYSCEF: 01/05/2023

employee charged with delinquencies in the performance of his [or her] job. Since the terminated employees' failure to be vaccinated is unrelated to the performance of their job, these statutes simply do not apply") (citations and internal quotation marks omitted); *O'Reilly v Bd of Educ. of the City School Dist. of the City of New York*, 2022 NY Slip Op 30173[U], **3-4 (Sup Ct, NY County 2022) ("The Court agrees with respondents that placing petitioner on leave without pay was not discipline under the Education Law and instead was merely a response to petitioner's refusal to comply with a condition of employment . . . Discipline involves alleged misconduct, not a prerequisite to doing the job in the first instance"). However, this matter does not involve a situation where petitioners' failure or refusal to comply with the Vaccine Mandate Order is at issue. Instead, petitioners maintain that they have, in fact, complied with the mandate and that the allegations are false. The DOE's decision to place petitioners on leave without pay (and subsequent reassignment) was not grounded in the undisputed failure or refusal of petitioners to be vaccinated, but in an accusation based on information gleaned from outside agencies that the Vaccination Cards uploaded by petitioners were probably fraudulent. Submission of fraudulent Vaccination Cards could clearly be characterized as misconduct, if not a crime. While petitioners, in such instance, would have also failed to satisfy a condition of employment, that failure would be inextricably intertwined with an act of misconduct, thus triggering the disciplinary procedure requirements of EL §§ 3020 and 3020-a. The DOE cannot cloak a misconduct claim in a failure to satisfy a condition of employment claim as means to avoid its obligation to afford the tenured petitioners their rights under the statute.

Accordingly, petitioners have demonstrated that the DOE's initial placement of tenured petitioners on leave without pay, and subsequent reassignment, was in violation of their rights under EL §§ 3020 and 3020-a, and therefore arbitrary and capricious. Furthermore, the tenured

Case 1:22-cv-04163-ENV-RML Document 17 Filed 05/18/23 Page 45 of 53 PageID #: 191
INDEX NO. 518863/2022
RECEIVED NYSCEF: 01/05/2023

petitioners have demonstrated their entitlement to permanent injunctive relief to prevent future and continuing violations of their rights under EL §§ 3020 and 3020-a. *See 144-80 Realty Assocs.*, 193 AD3d at 725; *Merkos L'Inyonei Chinuch, Inc. v Sharf,* 59 AD3d at 408. In this regard, the court finds that the petitioners have demonstrated a danger of irreparable harm resulting from their continued absence from the classroom, and that the equities balance in their favor.

In light of this court's determination that the DOE's actions were in violation of EL §§ 3020 and 3020-a, the court sees no need to address petitioners' argument that such action was also in violation of petitioners' due process rights under article 1, section 6 of the New York State Constitution.

Accordingly, petitioners' orders to show cause, motion sequences 1 and 2, are granted as to the tenured petitioners to the following extent:

It is hereby

**ORDERED, ADJUDGED AND DECLARED** that 1) the respondent DOE's initial determination placing tenured petitioners on leave without pay, and subsequently assigning them to reassignment centers, was in violation of the tenured petitioners' rights pursuant to EL §§ 3020 and 3020-a, and 2) that the DOE's determination is hereby declared null, void, and unenforceable; and it is further

**ORDERED** that tenured petitioners shall be reinstated to the assignments they held prior to their placement on leave without pay on April 19, 2022; and it is further

**ORDERED** that tenured petitioners shall be awarded any back pay withheld during the period they were placed on leave without pay; and it is further

9

Case 1:22-cv-04163-ENV-RML   Document 17   Filed 05/18/23   Page 46 of 53 PageID #: 192

**ORDERED** that the DOE is permanently enjoined from placing tenured petitioners on leave without pay or reassigning them to reassignment centers without the DOE first commencing disciplinary procedures pursuant to EL §§ 3020 and 3020-a; and it is further

**ORDERED** that the motions are in all other respects denied.

The foregoing constitutes the decision, order and judgment of the court.

E N T E R:

HON. GINA ABADI
J.S.C.

2022 DEC 30 AM 9:43
KINGS COUNTY CLERK
FILED

## Matter of Garzilli v.Mills

Appellate Division of the Supreme Court of New York, Third Department, Dec 3, 1998

250 A.D.2d 131 (N.Y. App. Div. 1998)

250 A.D.2d 131•681 N.Y.S.2d 176

December 3, 1998

Appeal from the Supreme Court (George L. Cobb, J.).

Jeffrey D. Friedlander, Acting Corporation Counsel of New York City (Ellen Ravitch, Stephen J. McGrath and William P. Farley of counsel), for appellants.

Featherstonhaugh, Conway, Wiley Clyne, L. L. P., Albany (Richard E. Casagrande of counsel), for Denise Garzilli, respondent.

---

SPAIN, J.

Petitioner is a tenured teacher employed by Community School District No. 12 (hereinafter CSD 12) which is one of 32 community school districts within the jurisdiction of respondent Board of Education, City School District of the City of New York (hereinafter the City Board). Respondent Board of Education for CSD 12 (hereinafter the CSD 12 Board), like the other 31 community school boards, consists of nine elected  members and has the power and the duty to establish educational policies and objectives not inconsistent with those established by the City Board (see, Education Law § 2590-e).

In November 1997, respondent Superintendent of CSD 12 (hereinafter the Superintendent) found that probable cause existed and preferred disciplinary charges against petitioner pursuant to Education Law § 3020-a; the charges brought against petitioner included six specifications alleging excessive lateness and absences. Petitioner thereafter requested a hearing on the charges and further requested that respondent State Commissioner of Education (hereinafter the Commissioner) not proceed with the charges because the CSD 12 Board did not conduct a probable cause vote as required by Education Law § 3020-a. When the

Commissioner informed petitioner that he would not intervene, she commenced this CPLR article 78 proceeding seeking to prohibit respondents from pursuing the charges; preliminary relief in the form of an injunction was initially granted pending a final determination on the merits. Supreme Court, in a well-reasoned decision, found that, under the relevant provisions of law existing at that time, the Superintendent did not have the authority to make determinations of probable cause and granted the petition.

Notably, in 1996, the year before the commencement of the disciplinary charges against petitioner, the Legislature made sweeping changes to the Education Law by enacting chapter 720 of the Laws of 1996 (hereinafter chapter 720), drastically altering the school governance system within the City of New York. Chapter 720 removed certain executive and administrative powers from the community school boards, transferring them to the community superintendents. Education Law § 2590-f (1) (c) (as amended by L 1996, ch 720, § 5) specifically granted community superintendents the authority "to appoint, define the duties of, assign, promote and discharge all employees". Significantly, however, this section did not address the issue of who or which body determines whether there is probable cause to support formal disciplinary charges brought pursuant to Education Law § 3020-a, which, inter alia, provides statutory due process for tenured teachers.

Education Law § 3020-a states, in pertinent part, as follows:

"1. Filing of charges. All charges against a person enjoying the benefits of tenure * * * shall be in writing and filed with the clerk or secretary of the school district or employing board during the period between the actual opening and closing of the school year for which the employed is normally required to serve. * * *

"2. (a) Disposition of charges. Upon receipt of the charges, the clerk or secretary of the school district or employing board shall immediately notify said board thereof. Within five days after receipt of charges, the employing board, in executive session, shall determine, by a vote of a majority of all the members of such board, whether probable cause exists to bring a disciplinary proceeding against an employee pursuant to this section."

Respondents did not dispute that prior to March 31, 1997, the effective date of chapter 720, the "employing board" was either the school board of each of the

community districts or the City Board, and not the community superintendents; however, they contended that the chapter 720 changes removed all executive and administrative powers from the community school boards and that the community superintendents, as the replacements of the "employing boards", became the sole entities within the system to which the Legislature had granted the power to make probable cause determinations.

Supreme Court disagreed, finding that the CSD 12 Board remained "the employing board" in this case and, thus the only entity authorized to make determinations of probable cause. The court found that although the Legislature, in enacting chapter 720, amended numerous subdivisions of Education Law § 2590-j, it did not amend subdivision (7) of section 2590-j, which states, in relevant part, that:

"Each community board shall have authority and responsibility with regard to trials of charges against any members of the teaching or supervisory service staffs of the schools within its jurisdiction as follows:

"(a) No such employee who has served the full and appropriate probationary period prescribed by, or in accordance with law, shall be found guilty of any charges except after a hearing as provided by [Education Law § 3020-a]."

Supreme Court properly concluded that, as it was within the province of the Legislature to amend Education Law § 3020-a and/or section 2590-j, in the absence of such changes the community school boards continued to have "the sole power and duty to make determinations of probable cause" and that "[n]o such authority [was] granted to community superintendents" under the 1996 amendments to the Education Law. Respondents then appealed.

The Commissioner, taking no position in the proceedings, has not appealed.

After respondents' appeal of Supreme Court's judgment was fully submitted and argued before this Court, the Governor signed into law chapter 385 of the Laws of 1998 (hereinafter chapter 385) on July 14, 1998. Of relevance here is section 3 of chapter 385 which amends Education Law § 2590-f, which is entitled "Powers and duties of community superintendents", by adding a new paragraph (s) to subdivision (1) stating as follows: "(s) notwithstanding any provisions of law to the contrary, to exercise all of the duties and responsibilities of the employing board as

set forth in section three thousand twenty-a of this chapter pursuant to a delegation of the chancellor under section twenty-five hundred ninety-h of this article".

Section 5 of chapter 385 amends Education Law § 2590-h, which is entitled "Powers and duties of chancellor", by adding a new subdivision (38) which states as follows: "38. to exercise all of the duties and responsibilities of the employing board as set forth in section three thousand twenty-a of this chapter with respect to any member of the teaching or supervisory staff of schools under the jurisdiction of the community boards. The chancellor shall exercise all such duties and responsibilities for all community districts or may delegate the exercise of all such duties and the responsibilities to all of the community superintendents of the city district."

Further, section 6 of chapter 385 amends subdivision (7) of Education Law § 2590-j, which is entitled "Appointment and removal of persons in the teaching and supervisory service", in three relevant ways: first, it deletes the initial provisions that "Each community board shall have authority and responsibility with regard to trials of charges against any members of the teaching or supervisory service staffs of the schools within its jurisdiction as follows"; second, it amends paragraph (a) to read as follows: "(a) No member of the teaching or supervisory staff of schools who has served the full and appropriate probationary period prescribed by, or in accordance with law, shall be found guilty of any charges except after a hearing as provided by section three thousand twenty-a of this chapter;" and third, it amends paragraph (d) by removing the provision requiring that any charges against a tenured member of the teaching or supervisory staff of schools be filed with the  community board. Finally, section 8 of chapter 385 provides as follows: "This act shall take effect immediately; provided, however, that sections three * * * five, [and] six * * * of this act shall be deemed to have been in full force and effect on and after December 31, 1996 for all purposes, including but not limited to any pending legal proceedings and actions." On August 18, 1998, in response to the new legislation, the Chancellor delegated in writing his duties and responsibilities as "employing board" to the superintendents of the community school districts and in that document he states that said delegation "shall be deemed to be in full force and effect on or after December 31, 1996". Both sides have now submitted supplemental briefs.

Initially, we conclude that prohibition is the appropriate procedural remedy for the assertion of petitioner's claim (see, Matter of Pirro v. Angiolillo, 89 N.Y.2d 351, 355). Prohibition is available "to prevent * * * a body or officer * * * from proceeding or threatening to proceed without or in excess of its jurisdiction" (Matter of Schumer v. Holtzman, 60 N.Y.2d 46, 51). Furthermore, petitioner had shown a clear right to the relief sought (see, Matter of Town of Huntington v. New York State Div. of Human Rights, 82 N.Y.2d 783) as the Superintendent at the time of her determination of probable cause did not have the authority to do so. Notably, chapter 385 is a clear acknowledgment of the infirmities in chapter 720 as found by Supreme Court.

Moving next to the merits, while there is no question that the Legislature intended the relevant provisions of chapter 385 to be effective as of December 31, 1996 and that they apply to all cases currently pending, we nonetheless conclude that chapter 385 falls short of curing the jurisdictionally defective finding of probable cause made in this case. Clearly, at the time of her finding, the Superintendent did not have the authority to act as the employing board under the Education Law or by virtue of any delegation by the Chancellor, the City Board or the CSD 12 Board. Although the curative provisions of chapter 385 are retroactive, the new legislation does not give superintendents the authority they needed in November 1997 to initiate disciplinary charges against tenured teachers. Moreover, while chapter 385 could have retroactively authorized community superintendents to act in place of the "employing board", it gave such power instead to the Chancellor, with the authority to delegate such power to the community superintendents (see, L 1998, ch 385, § 5). Consequently, the enactment of chapter 385, despite its retroactive effect, did not cure the Superintendent's lack of authority. It then became necessary for the Chancellor to, retroactive to December 31, 1996, delegate to all community superintendents "the authority to exercise all of the duties and responsibilities of the employing board as set forth in § 3020-a Educ. of the Education Law * * * including, but not limited to, determining whether probable cause exists to bring disciplinary proceedings against a tenured teacher".

We agree with Supreme Court's observation that "a proper determination of probable cause is an essential jurisdictional predicate to disciplinary charges" and analogous to the proper designation of a Hearing Officer (see, e.g., Matter of Wiggins v. Board of Educ., 60 N.Y.2d 385, 387; Matter of Perez v. New York

State Dept. of Labor, 244 A.D.2d 844). Generally, the same canons of construction are applicable to legislation and administrative regulations; consequently, where retroactive application is specifically stated, administrative regulations as well as statutes can be given retroactive effect (see, Matter of Cortland-Clinton, Inc. v. New York State Dept. of Health, 59 A.D.2d 228; 2 N.Y. Jur 2d, Administrative Law, § 188, at 246). However, a retroactive statute may not be used to make lawful an administrative act which was unlawful when taken (see, Lane v. Johnson, 283 N.Y. 244, 253-254; Olds v. City of Jamestown, 280 N.Y. 281, 285; Matter of London v. Wagner, 22 Misc.2d 360, 363, affd 13 A.D.2d 479, affd 11 N.Y.2d 762). Moreover, we find no precedent which permits the use of a retroactive delegation of authority to cure an administrative act which was unauthorized at the time it was taken (see, Matter of Wiggins v. Board of Educ., supra; Matter of Perez v. New York State Dept. of Labor, supra).

We reject respondents' assertion that any interpretation of chapter 385 which prohibits the Chancellor from making a retroactive delegation of his authority would render meaningless the retroactive application of the statute. A sound interpretation of chapter 385 is that the Legislature, by authorizing the Chancellor to delegate his duties to community superintendents and by deeming this authority to he effective on December 31, 1996, intended to make clear that these changes would apply to all prospective procedural steps in any pending proceeding commenced under the former law, as well as to validate any delegations which may have actually been made by the Chancellor after December 31, 1996.

It is clear that until the enactment of chapter 385 the Superintendent could have brought charges against petitioner by  seeking a probable cause determination from the CSD 12 Board or the City Board. In view of her unexplained failure to follow that course, respondents cannot now seek to accomplish the same result by such a broad interpretation of chapter 385.

For the foregoing reasons we conclude that chapter 385 did not authorize the retroactive delegation of authority to the Superintendent to determine probable cause. Accordingly, we affirm the judgment of Supreme Court.

MERCURE, J. P., PETERS, CARPINELLO and GRAFFEO, JJ., concur.

Ordered that the judgment is affirmed, without costs.